Benjamin P. Kitchell, Appellee, v. Chicago and Illinois Midland Railway Company, Appellant.

Gen. No. 8,906.

Opinion filed April 17, 1936. Rehearing denied May 27, 1936.

PROVINE & WILLIAMS and CLARK H. MILEY, all of Taylorville, for appellant.

J. M. POWERS and RAMON A. POWERS, both of Pekin, for appellee.

MR. JUSTICE ALLABEN delivered the opinion of the court.

On May 18, 1933, Benjamin P. Kitchell was riding in a truck owned by him and driven by his son, George Kitchell on Washington street in the city of Pekin, Illinois. Washington street was a through street and the truck was proceeding in a westerly direction. As the truck proceeded west it came upon the track of the Chicago & Illinois Midland Railway Company, which crosses Washington street at grade, and at practically a right-hand intersection. A northbound train of that railway company collided with the truck in question, and as a result thereof the truck was demolished and Benjamin P. Kitchell injured. As a result of this accident Benjamin P. Kitchell, plaintiff-appellee, brought

suit against Chicago & Illinois Midland Railway Company, defendant-appellant, in the circuit court of Tazewell county, and was awarded damages by a jury in the sum of $3,800 and costs. It is to reverse this judgment that the defendant has prosecuted this appeal to this court.

The original declaration consisted of two counts, and later by leave of court four additional counts were filed. The case was submitted to the jury upon the first count of the original declaration, and the third additional count. The first count of the original declaration alleges that on May 18, 1933, defendant operated a railway through the city of Pekin; that in said city Washington street, a public highway, running east and west, is intersected by said railway, and that on said date plaintiff was riding in a Chevrolet truck upon said Washington street, toward said crossing, not as the driver but as a passenger, the truck being driven by George Kitchell; that while the plaintiff was riding in said truck with all due care and caution for his own safety at the time and immediately prior thereto, the defendant by its servants then and there so carelessly, improperly and negligently operated its locomotive and train of cars that by and because of said conduct the locomotive ran into and struck the truck in which plaintiff was riding, demolishing the same and severely injuring the plaintiff, both temporarily and permanently, so that he lost and will lose great gains and profits, and has been required to expend large sums of money endeavoring to be cured, and his Chevrolet truck was destroyed, to the plaintiff's damage in the sum of $25,000.

The third additional count contains the same allegations as to the general situation of the street and the railway, and as to his riding in the truck, including an allegation that he was in the exercise of all due care, and then proceeds to charge that the defendant negli-

gently, recklessly, and unlawfully drove its locomotive up to and across Washington street crossing, in that no bell of at least 30 pounds of weight was rung, or steam whistle sounded at a distance of at least 80 rods from said crossing and kept ringing or whistling until said crossing was reached by said locomotive, and that in consequence thereof the locomotive ran into the truck, thereby injuring the plaintiff and destroying his property.

The court directed a verdict for the defendant as to the second original count, and the first, second, and fourth additional counts of plaintiff's declaration.

The plaintiff has assigned as cross error the ruling of the trial court in withdrawing plaintiff's first additional count from the jury, and also in withdrawing plaintiff's second additional count from the jury. Therefore, these two counts will be set out later in this opinion.

The plaintiff testified that he was 60 years old on the day of the accident; that on that day he was running a cream station at Gifford in Champaign county where he then lived; that he was the owner of a 1929 Chevrolet truck with a body 10 feet long, seven and one-half feet wide, two and one-half feet deep, with a two-inch lumber floor, open body, left-hand drive; that the truck had been driven to Pekin a number of times, but that he never, prior to the accident, had been on Washington street; that neither he nor his son had driven the truck on Washington street; that previously they had always come into Pekin on Court street; that on the day in question the son, George, was driving, sitting on the left-hand side, and plaintiff was sitting on the right-hand side; that there was a load of about 500 pounds on the truck; that the truck was not new when he bought it, that the brakes were in first class condition; that as they were proceeding west on Washington street they first came to the I. C. tracks which were

about 300 feet from the tracks where he was struck and injured; that they stopped and a flagman motioned them across, and they crossed five tracks; that he noticed a freight house on his right-hand side, and there were three more buildings on that side of the street, but that there was an opening between the freight house and the first building, and that he noticed a train to the north with smoke coming out; that after that there was no more view; that he looked both ways and could not see anything either way; that there were dwelling houses with sheds in back of them, which obscured the view; that it is 15 feet from the west house on the south side of Washington street to the nearest rail of the C. & I. M. tracks; that a fence was connected with a corner of the house, about four and a half feet high, with vertical pickets, and goes west to within five feet of the track, then turns and goes south, and that there were trees, shrubbery, brush and limbs hanging down, which would obstruct the view; that on the day of the accident the trees were leafed out; that after they crossed the I. C. tracks he remarked to his son there was a train up north; that they were going from 10 to 15 miles per hour and stopped when the front end of the truck was about 20 feet from the first C. & I. M. track, looked both ways and could not see to the south except for a small distance of the track; after looking both ways, and as he got farther west he could see the train to the north, apparently standing still, looked south and saw the passenger train coming toward them about 125 feet down the track; that at that time the front end of the truck was just on the first rail of the side track, or about between the rails of the first track and this train was coming on the next track; that the speed of the truck was 10 miles an hour; that his son immediately applied the brakes, tried to stop, and just came to a standstill when the train struck the truck; that the front wheels of the truck were right between

the two rails of the second track; that the train was traveling about 45 miles an hour; that the train struck the truck with great violence and he felt something hit his back and he was rendered unconscious; that he remembers being placed in an ambulance and taken to the Pekin hospital. He then testified as to his injuries and the medical attention he had received; that as one went west on Washington street toward the C. & I. M. railway company tracks one first reached the east rail of the east track; that there followed the width of that track, the space between the first track and the second track before reaching the track where the train moved on; that the truck was being driven a very little to the right of the center of Washington street; did not hear a train whistle and does not remember any train whistle but does not say that there was not any; admits that there was on the right-hand side of Washington street, just at the curb, and east of the first track, a railroad signal light, which he did not see, and does not remember seeing at all; that a view of that signal light was obscured by a telephone pole, which was the ordinary size; that the railroad signal was a pole with a cross bar, about three feet long, at right angles, and there was a cross bar with a large light on each end; that 25 or 30 feet east of the track the road is two feet lower than the track.

George Kitchell testified for the plaintiff, and his testimony is in accordance with that of his father, the plaintiff in this case. He also states that he did not see the railway signal because there was a telephone pole there, and that there were wires on it, which were 20 feet from the ground; that the railway signal was about six to eight feet high, with a crossbar with a light on each end; that he did see the railroad crossing sign, but did not see the flashing light signal.

A number of other witnesses testified for the plaintiff, who placed the speed of the train at from 25 to 40

miles an hour. They also testified that the view to the south was obstructed by buildings, sheds and trees, so that it was not possible to look very far down the track until one was almost on the track. Some of them testified that they did not hear any whistle or any bell, while others testified as to hearing the whistle and bell. No witness for the plaintiff testified that no whistle was blown or no bell rung.

Dr. William S. Needham testified at some length as to the present condition of the plaintiff, as did also Dr. Hugh Cooper. It is sufficient to say that their evidence would indicate that the plaintiff has been permanently and rather severely injured. Plaintiff then offered in evidence as exhibit 5 general order 123 of the Illinois Commerce Commission. This offer was refused, and the refusal has been assigned as cross error in this court. In our opinion this exhibit was properly refused for the reason that it has to do with many matters not at issue in this case, and that it would tend to confuse rather than to clarify the issues.

Thereafter the plaintiff offered in evidence as exhibit 6 parts of general order 123 of the Illinois Commerce Commission, with proper certificate. The court refused to admit plaintiff's exhibit 6 in evidence, and such refusal of the trial court was assigned as cross error by the plaintiff. This plainly was an effort to correct some of the objections to plaintiff's exhibit 5, which was the entire order. However, we do not believe that it rendered plaintiff's exhibit 6 admissible in the form as presented, and that the trial court committed no error in refusing to admit the same.

At the conclusion of all of plaintiff's evidence motions were made to find the defendant not guilty as to all counts, and as to each count separately. As previously stated the court withdrew the second original count, and the first, second and fourth additional counts, and denied the motion as to the first original

count, and third additional count, to which ruling the defendant excepts, and has assigned error.

For the defendant, a taxicab driver, named Roderick Lane, testified that he came on to Washington street after the plaintiff's truck had just passed him, and that he went west behind said truck; that he heard the railroad engine whistle, saw the crossbar railway crossing sign, and the lights thereon, and that the lights were flashing; that the truck was going 25 to 30 miles per hour and it did not stop at any time before it reached the C. & I. M. tracks. In addition to this testimony there were a number of witnesses who testified for the defendant that they heard the whistle and bell. Without going into their testimony in detail, three witnesses testified that they heard the whistle and bell, four more testified that they heard the whistle, and one that he heard the whistle and saw the red flasher working. No witness testified that the whistle was not blown, or that the bell did not ring, or that the flasher lights were not in operation. The testimony as to that, on behalf of the plaintiff, was all negative; that is, that the witness did not hear the whistle or did not hear the bell, or did not see the flasher light, but as before mentioned no one said that the bell did not ring or that the whistle was not blown, or that the flasher lights were not operating.

The plaintiff and his son tried to explain away the fact that they did not see the cross-buck sign or the flasher, although they admit the signs were there, by saying that a telephone pole and the wires were in the way. This explanation is not satisfactory in any way. The truck was being driven just north of the middle of the street, the cross-buck sign with the flasher lights was just at the north curb and a short distance from the east rail of the east track. The post mentioned was near the curb and across a paved alley to the east of the sign some 10 or 12 feet. The wires which were supported by this post were 20 feet or more above the

ground. Both plaintiff and the driver of the truck testified that the truck was stopped about 20 feet east of the east rail of the east track. This would be approximately even with the post heretofore mentioned. Considering all the above it is very clear there was no obstruction which would prevent the plaintiff and the driver of the truck from seeing the cross-buck sign and the flashing lights when they brought the truck to a stop, if not for a considerable distance east of the point where they brought the truck to a stop. ''It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger.'' (*Greenwald v. Baltimore & Ohio R. Co.*, 332 Ill. 627.) Certainly that includes looking for danger signs established by the railroad for the protection of those going upon its tracks just as much as it applies to looking up and down the track before entering upon the same to see if any train is coming.

Plaintiff seeks to find an excuse for his action because this was the first time he had ever traveled upon Washington street, and that he had always traveled on Court street, and that on Court street the Illinois Central and the defendant use the same tracks. We fail to follow the reasoning because if the plaintiff did not know the situation on this new road it was his duty to use all the more care not to put himself in a position of danger, and we fail to see that the fact that the same tracks were used at one intersection would justify the assumption that they were used at all other intersections, so that it could be said that the plaintiff having been flagged·across the I. C. tracks could assume that the act of the flagman would justify the belief that the other tracks, 275 to 300 feet farther west, were clear, and that he could assume that the flagman was assuring them that there would be nothing on these tracks of another railroad. From an analysis of the above

testimony it seems clear to us that taking the most favorable viewpoint of the testimony on behalf of the plaintiff, the plaintiff failed to show that he was in the exercise of due care and caution for his own safety at the time and place of the accident, and that the trial court should have directed a verdict for the defendant on the first original count and the third additional count, at the close of plaintiff's testimony.

Inasmuch as the plaintiff has filed cross error on the ruling of the trial court in withdrawing plaintiff's first additional count, and plaintiff's second additional count from the jury if this court finds that the judgment of the trial court should be reversed it will be necessary to set out these two counts. The first additional count charges that the defendant wilfully, wantonly and with gross and reckless disregard for the safety of the life and limb of plaintiff, operated and drove said locomotive across said Washington street crossing, and because of said wilful, wanton and gross misconduct of the defendant, said locomotive struck the truck in which plaintiff was riding, with the consequent injury. It further charges the defendant with having failed to drive said train across said Washington street at the time of the accident with caution and with said train under control in accordance with Illinois Commerce Commission order 123, and charges further that it drove its train over said crossing at the speed of 45 miles per hour in utter disregard and violation of said general order 123. We are of the opinion that the court properly withdrew this count from the consideration of the jury. The evidence shows that the train was operated at from 25 to 45 miles an hour over this grade crossing within the limits of the city of Pekin. This does not constitute wilful and wanton misconduct. In the case of *Provenzano v. Illinois Cent. R. Co.*, 357 Ill. 192, Mr. Justice Shaw in commenting on what constitutes wilful and wanton misconduct in the operation

of a train said: "In order to constitute wilful and wanton misconduct the injury must either have been intentionally inflicted, or produced by acts so grossly negligent as to exhibit a reckless disregard for the safety of others. (*Brown v. Illinois Terminal Co.*, 319 Ill. 326.) The only evidence for the plaintiff tending to show negligence on the part of the defendant was to the effect that some of the witnesses did not hear a bell or whistle, and evidence tending to show that the speed of the train was something between 45 and 60 miles per hour. The testimony of the witnesses to the effect that they heard no bell or whistle was merely negative in its character and did not tend to raise an issue of fact as to whether or not the whistle was blown or the bell rung. (*Morgan v. New York Central Railroad Co.*, 327 Ill. 339.) However, even if it be taken as true that no bell was rung or whistle sounded, it would be nothing more than an act of negligence. The same is true as to the speed at which the train was running, even if it be assumed at the highest estimate of 60 miles per hour. The public interest requires, and the law permits, that passenger trains may be operated at such speed as may be consistent with a due regard for the safety of the passengers and those persons who are, in the exercise of due care for their own safety, traveling on the highways over and across the railroad tracks. (*Chicago & Northwestern Railroad Co. v. Dunleavy*, 129 Ill. 132; *Partlow v. Illinois Central Railroad Co.*, 150 Ill. 321.) There being no evidence showing or tending to show that the defendant wilfully or intentionally injured the plaintiff and no evidence of any circumstance exhibiting a reckless disregard for his safety, there should have been a directed verdict as to the third count of the declaration."

It is, therefore, our opinion that the trial court properly withdrew this count from the consideration of the jury.

The second additional count charges the railway company with negligence in that it operated its engine within the city of Pekin at 45 miles per hour which it is alleged was careless, reckless, negligent and unlawful conduct, and in violation of general order 123 of the Illinois Commerce Commission. This count is a restatement of the first additional count, without the charges of wanton and wilful misconduct. Inasmuch as we have previously determined from the evidence that the plaintiff's proof did not show that he was exercising due care and caution for his own safety at the time and place in question we believe no further comment is necessary in deciding that the trial court properly withdrew this count from the consideration of the jury.

What we have said previously in regard to the refusal of the trial court to admit in evidence plaintiff's exhibits 5 and 6 has already disposed of that contention. We believe this disposes of all the contentions raised by either party, and that this judgment must be reversed for the reason that the evidence at the close of plaintiff's case disclosed that the plaintiff failed to exercise due care and caution for his own safety at the time and place of the accident.

*Judgment reversed.*