PATRICIA SLATER, Adm'r of the Estate of DAVID SLATER, Deceased, Plain-tiff-Appellant, *v.* MISSIONARY SISTERS OF THE SACRED HEART, d/b/a COLUMBUS HOSPITAL, Defendant-Appellee.

(No. 56688; ▇▇▇▇▇▇▇▇)

First District (2nd Division)—June 10, 1974.

Frederick J. Bertram, of Chicago, for appellant.

Clausen, Hirsh, Miller & Gorman, of Chicago (John R. Caffrey, James T. Ferrini, and William J. Sneckenberg, of counsel), for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is an appeal from a judgment entered in a suit filed by David Slater against the Missionary Sisters of the Sacred Heart, a corporation doing business in Chicago as Columbus Hospital. In a complaint sounding in tort, he sought recovery for personal injuries he allegedly suffered while he was a patient in defendant's hospital. Slater died while the suit was pending. Therefore, his daughter Patricia, administrator of his estate, was substituted as the party plaintiff. She thereafter filed an amended complaint and the case was heard by a jury. At the close of her case, after the trial court refused to admit certain exhibits she offered in evidence, defendant moved for a directed verdict. The motion was sustained, post-trial motions were later overruled and judgment was entered on the verdict.

Three issues are presented for our review. (1) Whether the trial court erred when it refused to admit certain exhibits offered by plaintiff. (2) Whether, on the facts of this case, the trial court erred in not applying the doctrine of *res ipsa loquitur*. (3) Whether the trial court erred in sustaining defendant's motion for directed verdict.

On June 30, 1964, David Slater was admitted to the Columbus Hospital for treatment of a bilateral inguinal bulging. This was the only

diagnosis made of his condition; there was no indication of any emotional or psychiatric illness. An operation was recommended, and on July 1, 1964, this was successfully performed. After the necessary surgical procedures, he was returned to a private room on the second floor of the hospital. The post-operation entries in his medical record showed a normal period of recovery after surgery; no neurological difficulty of any kind developed.

At about midnight on July 4, when the supervising nurse looked in on him, Slater had no complaint; he was in bed, reading. She asked him if he needed anything to sleep; he said he did not. Then, in an off-hand comment to the nurse, Slater said, "I usually stay up nights reading anyway." After hearing this, the nurse left. However, at about 4:30 A.M. the following morning, the nurse found Slater lying in an ambulance driveway 25 feet below his room, having apparently either jumped or fallen from the window. He was banging his head against the pavement saying, "Let me die, leave me alone, just let me die." Slater was brought back into the hospital, given emergency treatment and later listed as in critical condition. A neurological consultant was called; and after examining Slater, he concluded that the patient had developed delirium tremens at about 4:20 A.M. that morning. In an interview, Slater's mother informed the attending physician and the consultant that her son was a chronic alcoholic who was mentally disturbed as a result of his war experience. From this information, the hospital learned that Slater was a veteran. Consequently, on July 9, 1964, he was transferred to the Veterans Administration Hospital in Chicago. He remained there until November 24, 1964, when he was discharged. Then, unrelated to his injuries of July 5, 1964, Slater died of aspiration pneumonia on November 18, 1966.

At the trial, plaintiff called three witnesses who testified before the jury. The first was the Columbus Hospital supervising nurse who described her inspection of Slater's room at about midnight on July 4, 1964, and how she found him on the ambulance driveway during the early morning hours of July 5. The second was a Veterans Hospital file clerk who brought to court the medical records of Slater's hospitalization in that institution between July 9 and November 24, 1964. The third was the plaintiff who told the jury of the circumstances under which her father was admitted to Columbus Hospital and the condition in which she saw him after he was found on the ambulance driveway.

In presenting her case to the jury, plaintiff offered in evidence Slater's medical record at the Veterans Hospital, a statement of the charges that hospital made for the period of hospitalization, a portion of Slater's Veterans Hospital record, a set of the standards for hospital accredita-

tion, a section of the Illinois Hospital Licensing Act, a copy of the State requirements for hospital licensing and a set of the bylaws, rules and regulations of the Columbus Hospital. To each of these, defendant made an objection which the court sustained.

■■ With regard to the Veterans Hospital records, no nurse, doctor or other person was called to testify to the authenticity of the entries they contained. It is well established that hospital records are generally not admissible without the testimony of the persons who made the entries which comprise the medical records. (*Messina v. Zody*, 13 Ill.App.3d 566, 300 N.E.2d 851; *Flesberg v. Prince Warehouse Co.*, 37 Ill.App.2d 22, 184 N.E.2d 813.) Obviously, on plaintiff's offer of them, these exhibits were not admissible in evidence. Therefore, the trial court was correct when it sustained defendant's objections. See *Wright v. Upson*, 303 Ill. 120, 135 N.E. 209; *In re Estate of Rupinski*, 131 Ill.App.2d 393, 266 N.E.2d 190.

■■ Plaintiff's other exhibits were a set of standards for hospital accreditation, a section of the Illinois Hospital Licensing Act and a copy of certain parts of the State's hospital licensing requirements. These were documents; and as such, their admission in evidence was governed by the principles which apply to oral testimony: they must be competent and relevant, or material. 4 Callaghan's Illinois Evidence § 8.01.

■■ It appears from the pleadings that there was no issue in the case concerning defendant's compliance with standards for hospital accreditation. In fact, plaintiff did not allege that David Slater was injured as a result of defendant's noncompliance with hospital accreditation standards. Nor was there any issue between the parties concerning compliance by defendant with the Illinois Hospital Licensing Act or with the State's requirements for the licensing of a hospital. This being so, the exhibits were irrelevant and immaterial. Exhibits which are irrelevant or immaterial are properly excluded when objections to them are made. (See *Kitchell v. Chicago & Illinois Midland Ry. Co.*, 285 Ill.App. 368, 2 N.E.2d 164; *Feeley v. McAuliffe*, 335 Ill.App. 99, 80 N.E.2d 373; *Rockwood Sprinkler Co. v. The Philips Co.*, 265 Ill.App. 267; compare *Tenebaum v. City of Chicago*, 11 Ill.App.3d 987, 297 N.E.2d 716.) Therefore, the trial court did not err when it refused to admit in evidence those certain exhibits which plaintiff offered in evidence.

■■■ Nor did the trial court err when it failed to apply the doctrine of *res ipsa loquitur* to this case. The doctrine known as *res ipsa loquitur* is an exception to the general rule which governs burden of proof in medical malpractice cases. (*Estell v. Barringer*, 3 Ill.App.3d 455, 459, 278 N.E.2d 424.) It applies where a doctor, nurse or other hospital personnel is so grossly remiss that their conduct falls within the common

knowledge of a layman, or is so contrary to acceptable and customary medical practices and standards that the injury complained of would not have occurred but for negligence in the course of such conduct. (*Estell v. Barringer*, 3 Ill.App.3d 455, 459, 278 N.E.2d 424; see Annot., 9 A.L.R. 3d 1315.) In the case she made to the jury, plaintiff did not prove that David Slater's injuries would not have occurred but for defendant's negligence. Therefore, on the record before us, it is plain that the doctrine had no application. See *Simmons v. South Shore Hospital*, 340 Ill. App. 153, 91 N.E.2d 135.

■■ In fact, even on the theory that defendant was negligent when David Slater was injured, the evidence at the close of plaintiff's case, construed most strongly in her favor, did not show that a verdict for her, based on that evidence, could ever stand. (See *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504.) For example, plaintiff's evidence did not explain what caused David Slater to jump or fall from the window of his second floor room in defendant's hospital. None of defendant's personnel had any knowledge that Slater was inclined to acts of self-destruction. When he was admitted to the hospital, there was no disclosure that he had a history of psychiatric illness. His hospitalization during surgery was normal and up till the time that he suffered his injuries, he did not develop any emotional disturbance or difficulty of any kind. When he was last seen, before he was injured, his comment was normal and natural, all leading the supervising nurse to conclude that he needed no special attention. When plaintiff testified concerning the circumstances of Slater's hospitalization, she did not say anything to indicate that there was any suggestion in his condition which would have put defendant and its personnel on notice that precautions should have been taken to protect Slater from himself.

■■ Although a hospital is not an insurer of a patient's safety, it owes him a duty of protection and it must exercise the degree of reasonable care toward him as his known condition may require. (*Mounds Park Hospital v. Von Eye* (8th Cir. 1957), 245 F. 2d 756.) This duty extends to safeguarding a patient from dangers due to mental incapacity where that incapacity is known, or by the exercise of ordinary care ought to have been known. (*Sylvester v. Northwestern Hospital* (1952), 236 Minn. 384, 386, 53 N.W.2d 17.) Foreseeability of harm is an essential element to actionable negligence against a hospital for breach of duty of care to a patient under the circumstances claimed by plaintiff in this case. (*Frederic v. United States* (E.D. La. 1965), 246 F. Supp. 368.) Knowledge, then, that a patient requires reasonable precautions to protect him from self-destruction, is essential before liability can be imposed on a hospital for injuries the patient suffers at his own hands. (See

*Johnson v. Grant Hospital* (1972), 32 Ohio St. 2d 169, 291 N.E.2d 440; *State v. Washington Sanitarium & Hospital* (1960), 223 Md. 554, 165 A. 2d 764; *Clements v. Swedish Hospital* (1958), 252 Minn. 1, 89 N.W. 2d 162.) Plaintiff's evidence was not sufficient to raise a jury issue on this essential fact. Therefore, the trial court did not err when it sustained defendant's motion for a directed verdict. The judgment is affirmed. *Dimitrijevic v. Chicago Wesley Memorial Hospital*, 92 Ill.App.2d 251, 236 N.E.2d 309.

Affirmed.

HAYES, P. J., and DOWNING, J., concur.