JOHN D. WILSON, Plaintiff-Appellant, *v.* DAVID J. CLARK, Defendant-Appellee.

Second District No. 78-248

Opinion filed January 10, 1980.

Frank C. Stanley, of Chicago, for appellant.

James S. Mills and Gates W. Clancy, both of Geneva, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, John Wilson, brought this action against the defendant, Dr. David Clark, as the result of the alleged negligent medical treatment of the plaintiff which resulted in the amputation of his right leg below the knee. Following a jury trial, a verdict was returned for defendant, and plaintiff appeals. Due to the errors committed at trial, we reverse and remand for a new trial. A statement of the pertinent facts follows.

On January 8, 1972, the 20-year-old plaintiff was struck by a car and suffered injuries to his right leg, namely, a spiral fracture of the tibia (the "shin bone") and two fractures of the fibula (the thinner bone running parallel to the shin bone). The fracture to the tibia was a short oblique fracture, a type which tends to be unstable, *i.e.*, one that cannot be maintained in a correct position after several attempts to reduce or set it. Two days after the injury, defendant performed a surgical procedure known as an "open reduction" on plaintiff's right leg and inserted a single screw into the fracture site. There is a recognized percentage of infection complication when an open reduction is done. Following his release from the hospital in late January 1972, plaintiff suffered from diarrhea and fever, experienced weight loss, and the surgical wound drained pus. On February 24, 1972, plaintiff was seen by Dr. Arthur Abbott, an associate of the defendant. Dr. Abbott's notes indicated that he examined plaintiff and "wondered about the possibility of an osteomyelitis," an infection of the bone marrow by bacteria such as pseudomonas. However, defendant assured Dr. Abbott that plaintiff did not have osteomyelitis. Plaintiff was in a cast until June 1972, when he went back to work.

A second operation was performed on plaintiff's leg by defendant on December 6, 1972, due to the malunion of the tibia. Prior to the second

operation plaintiff's right leg was badly bowed to the outside, the calf was large and swollen. Plaintiff could not manipulate his right foot well and walked with a bad limp. In the second operation, defendant performed an osteotomy on plaintiff's right leg in which he inserted an "AO plate" with four screws over the fracture site to hold the reduction. Following this surgery, pus continued to drain from the front part of the leg. In a third operation, performed June 2, 1973, the plate and screws were removed. The plate and screws were tested and "chronic inflammatory cells" and "sequestrum" (broken down bone) were found. There was testimony that the latter finding was infection or osteomyelitis from the pseudomonas bacterium. However, according to defendant, the "inflammatory cells" were a nonspecific finding and not osteomyelitis. Plaintiff last saw defendant on January 14, 1974; the wound was still draining.

Plaintiff then went to Dr. Jack Robbins who operated on plaintiff on April 18, 1974, and inserted Steinmann pins into the fracture site and placed the leg in a cast. A culture test of the tissue removed during this surgery showed pseudomonas, and plaintiff was placed on antibiotics and discharged from the hospital. The Steinmann pins were drawn out on July 2, 1974, and plaintiff's leg recasted. Plaintiff's cast was removed on October 8, 1974, and a splint was applied which allowed movement. At this time no infection appeared, nor was plaintiff on any antibiotics. Plaintiff was admitted to the hospital on December 1, 1974, with inflammation; his right leg was amputated below the knee on December 8, 1974. Tissue and bone from the amputation was tested and "chronic" and "acute" inflammation was found in the fracture site. Thereafter, plaintiff commenced this lawsuit.

Plaintiff has presented 10 issues for review on appeal. Due to our disposition of this case, only three of them will be discussed.

We turn first to the errors alleged regarding the admission of plaintiff's hospital records into evidence. Previous to defendant calling his expert witness, Dr. Clifford Nyman, to testify, there was a discussion outside the presence of the jury concerning the propriety of the hypothetical question that was intended to be propounded to Dr. Nyman. Over plaintiff's objection, the trial court permitted defense counsel to place into evidence plaintiff's hospital records, which contained a multitude of pages of technical medical entries, including history sheets, laboratory reports, temperature charts, medication, administration sheets, X-ray reports, progress reports, pathology reports, post-anesthesia reports, physician orders and nurses' notes. Defense counsel was then permitted to ask Dr. Nyman to assume the facts stated therein to be true and then to ask the witness to assume additional facts. Plaintiff objected to the hypothetical question on two grounds, namely, (1) that the hospital

records were inadmissible without the proper foundation, and (2) that plaintiff would have no idea upon which facts contained in the hospital records defendant's expert witness based his opinion, since there had been no evidence as to the content of the records, and as a consequence it would be impossible to cross-examine the expert upon the facts he relied. ■■ ■ Supreme Court Rule 236(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 236(a)) provides that a business record which qualified under the Rule shall be admitted into evidence without introducing all other circumstances of its making. Under the rule, such circumstances merely affect its weight, not its admissibility. However, the provisions of this rule do not apply to the introduction into evidence of hospital records or police accident reports. (See Ill. Rev. Stat. 1977, ch. 110A, par. 236(b).) It has been held, therefore, that the admission of hospital records will be allowed only where a proper foundation is laid. (*Casey v. Penn* (1977), 45 Ill. App. 3d 573, 360 N.E.2d 93.) The proper foundation is laid by the testimony of the person who made the entries in the hospital records. (*Slater v. Missionary Sisters* (1974), 20 Ill. App. 3d 464, 314 N.E.2d 715.) As there was no testimony by the person making the entries, the admission of the hospital records here was error. Further, allowing such a hypothetical question based upon the unspecified contents of the plaintiff's hospital records not only hampered plaintiff's cross-examination of defendant's expert witness, but permitted purely argumentative material, rather than statements of assumed facts from which an expert can form an opinion, to be placed before the jury. (Compare *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301.) Therefore, upon retrial of this case, the use of such a hypothetical question should not be permitted.

⊛ 3 However, defendant argues that plaintiff's attorney stipulated to the authenticity of these records and thus has waived the necessity for a foundation. Indeed, that appears to be the reason the trial court overruled plaintiff's objection to their admission, and allowed them into evidence. Plaintiff's attorney argues that by stipulating to the authenticity he merely waived the right to demand that the custodian of the records come to court to testify that: (1) he had received a subpoena to bring the records to court; (2) that the records are kept in the regular course of the hospital business; (3) that the records contain no alterations or deletions; and (4) are in the same condition now as when the entries were originally made. However, there is no indication of a waiver of the requirement of the testimony of the person who actually made the entries necessary for the establishment of the proper foundation. We conclude, therefore, that plaintiff did not waive the necessity of establishing a foundation for the admission of the hospital records, and that the trial court erred in admitting them into evidence.

Next, we turn to the allegation of error regarding the use of a medical textbook at trial. During direct examination of defendant by his counsel, the following colloquy occurred:

"Q: Did you hear yesterday when Dr. Khedroo [one of plaintiff's experts] said it was accepted medical treatment to put the screw perpendicular to the fracture line?

A: He said the proper treatment was to—to be perpendicular to the line of the fracture not perpendicular to the axis of the bone. In fact, the correct answer is the opposite of what Dr. Khedroo said and in my view it was placed in proper fashion.

Q: There is even a picture in the old addition of Campbell's showing it just like this on Exhibit 19, isn't there?

PLAINTIFF'S COUNSEL: Are we referring to—

THE WITNESS: There is.

PLAINTIFF'S COUNSEL: Are you referring to Campbell's now on direct examination? It's highly improper. It just—it's only to be used on cross-examination.

THE COURT: He—

DEFENSE COUNSEL: What if it goes—

THE COURT: The door is open, he may use it. The answer may stand."

Plaintiff argues that the Campbell's Operative Orthopedics referred to in the above colloquy is an earlier edition of the same text that was admitted as authoritative, and that the earlier edition should not have been utilized without first establishing its authoritativeness. (See *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253.) However, plaintiff failed to object to the use of the earlier text at trial. Plaintiff further urges that the use of such a text is limited to use on cross-examination. *Lawson v. G. D. Searle & Co.* (1975), 29 Ill. App. 3d 670, 331 N.E.2d 75, *rev'd on other grounds* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.

Defendant, on the other hand, contends that these allegations of error were not designated with the required specificity in plaintiff's post-trial motion to preserve the issue for appeal. (See *Enloe v. Kirkwood* (1970), 120 Ill. App. 2d 117, 256 N.E.2d 459.) A post-trial motion need not specify errors in detail; however, the motion must nonetheless indicate the grounds upon which the litigant relies with sufficient particularity to afford the trial judge the identity of the error relied upon. (*Danielson v. Elgin Salvage & Supply Co.* (1972), 4 Ill. App. 3d 445, 280 N.E.2d 778.) In *Richman Chemical Co. v. Lowenthal* (1958), 16 Ill. App. 2d 568, 572, 149 N.E.2d 351, 354, the court stated:

"The provision was designed to require parties in their post-trial motion to specifically set forth the ground or grounds upon which

the motion was based. Its purpose was to prevent the moving party from hiding behind a general objection in the trial court and for the first time raising with particularity in the Appellate Court an objection that had not been argued before the trial judge."

■■ Assuming, arguendo, that the post-trial motion did not designate this error with required specificity, a review of the colloquy quoted above reveals that plaintiff specifically objected to the use of the Campbell text on direct examination. The trial court was aware of the specific basis for the objection and therefore plaintiff has not waived the issue on appeal. On the basis of the foregoing discussion, we hold that the trial court erred in permitting the use of the Campbell text on direct examination.

Next, we turn to the allegation that the trial court erred by permitting incompetent and prejudicial testimony on the issue of contributory negligence. Plaintiff has cited several instances wherein this alleged error occurred. However, deciding the case as we do, we need discuss only one of them. During cross-examination of plaintiff by defense counsel, the following colloquy took place:

"Q: Did you at the same time that you saw him the next day also tell Dr. Clark [defendant] that you had been drinking at this picnic?

PLAINTIFF'S COUNSEL: Objection, if the Court please.

THE COURT: He may answer.

THE WITNESS: Yes, I had a couple of beers.

PLAINTIFF'S COUNSEL: I move it be stricken, Your Honor. It's irrelevant and immaterial.

THE COURT: I have already ruled, the answer may stand."

Again, with regard to this allegation of error defendant argues that plaintiff had completely failed to specify any such claimed error in his post-trial motion and has thus waived it. However, we conclude on the basis of our reasoning set forth earlier in this opinion that plaintiff has not waived the presentation of this alleged error.

It is clear from the record that defendant's main defense was founded in plaintiff's alleged contribution to his own amputation. Thus, it appears that the colloquy quoted above went to the issue of contributory negligence, namely, that plaintiff was not "following" defendant's post-operative instructions, or that plaintiff was simply unmindful of already unsteady maneuvering with his crutches. We note that previously on direct examination concerning a fall in a parking lot, plaintiff had testified that he had had something to drink. However, this incident was totally unrelated to the incident under discussion here.

■■ The record in this case fails to indicate that defendant had warned plaintiff that due to his condition he could not drink beer or other alcoholic spirits during plaintiff's convalescence. Further, unlike the

previous inquiry about drinking, the discussion here was not concerning a fall that plaintiff had had, but, rather, concerning plaintiff's changing of his own dressings on the surgical wound. We agree with plaintiff that the question was improper, and the objection should have been sustained and the answer stricken. Since the issue of contributory negligence is of great importance in this case, we cannot hold that the error here was harmless.

As a result of the errors discussed in this opinion, we are of the opinion that this case must be reversed and remanded for a new trial. While we express no opinion on the plaintiff's other allegations of error, we are confident that they will not occur on the retrial of this case.

The judgment of the circuit court of Kane County is reversed and the cause remanded for a new trial.

Reversed and remanded.

NASH and LINDBERG, JJ., concur.