THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEON D. STATEN, Defendant-Appellant.
Second District   No. 79-227

Opinion filed November 7, 1980.

Mary Robinson and Donna Palm, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

Following a bench trial defendant, Leon Staten, was convicted of indecent liberties with a child (Ill. Rev. Stat. 1975, ch. 38, par. 11—4) and was sentenced to a term of five years probation conditioned upon his accepting counselling at a mental health clinic. He appeals, contending that the trial court erred in admitting into evidence certain hospital records without foundation.

At trial the mother of the three-year-old alleged victim testified that her daughter had spent the night of December 3, 1976, at the home of a relative of the 17-year-old defendant, where defendant also resided. The mother stated that on December 7, 1976, defendant informed her that the child had experienced a discharge and should see a doctor. Defendant also told her he had a similar discharge and expressed a desire for medical care. Both defendant and the child were examined in the Rockford Memorial Hospital emergency room that same day, and the mother accompanied defendant and her daughter back to the hospital two days later when the child was treated for gonorrhea.

Marilyn Perry and Virginia Mavis, who were employed as emergency room nurses at the hospital, testified that defendant and the child underwent GC screen gonorrhea tests on December 7 and that penicillin was administered to defendant at that time. The nurses stated that discharges of the type experienced by the defendant and the child could have been the result of any one of several causes. Both nurses described the GC screen procedure whereby a sample of a discharge or other material is taken from a patient, identified by the patient's name, room number and physician and sent to the hospital laboratory for analysis.

Susan Francis, who was the supervisor of the department of medical technology at the hospital, described the procedures normally followed in conducting such tests, but testified that she had no personal knowledge of the actual procedures followed as to defendant and the child. She stated that following a 48- to 72-hour incubation period a sample received from a patient is chemically tested and otherwise examined by a laboratory technician and, if the patient is under 15 years old, a further oxidase carbohydrate fermentation test is also performed. This witness testified that the laboratory technician assigned to examine a particular specimen is required to follow these procedures before the results of his examination may be placed in the hospital records which are stored in its computer system. When asked whether the proper procedures were followed in testing the child in this case, the witness stated that only the test results contained in the computer printout of the hospital record were available. She could testify with certainty only regarding normal testing processes which should be followed in such cases; she had never personally seen plate cultures bearing the name of either defendant or the

child. Two computer printouts were identified by Mrs. Francis as records of the hospital which disclosed that defendant and the child were each infected with "Heavy N Gonorrhea."

Deputy Donald Merkle testified to an interview he had with defendant on December 10, 1976, when, after being advised of his rights and executing a juvenile rights waiver form, defendant first orally admitted to the offense and then signed a written confession.

Defendant also testified in trial, and he denied engaging in criminal sexual activity with the child. He claimed the statement he had given to the officer was untrue and that he had signed it only in the belief he would be spared from a jail term and because he was frightened. Defendant acknowledged seeing a yellow stain on the victim's clothing but testified his confession was the product of fear because of evidence that he and the child both had gonorrhea.

The computer printouts of the hospital records and defendant's confession were admitted into evidence over his objection. The trial court concluded, in finding defendant guilty, that the fact the child had gonorrhea established the *corpus delicti* (that indecent liberties had been taken with the child).

Defendant contends first that the hospital records contained in the computer printouts were erroneously admitted in evidence as they lacked sufficient foundation and could not properly be considered as evidence of the results of the tests in question.

Initially we note the obvious, that the statements contained in the computer printouts are hearsay. Defendant points out that the admission of these hospital medical records and their contents precluded all inquiry into or consideration of the trustworthiness of the testing procedures actually employed in this case, the qualifications and reliability of the technicians and the safe custody of the material tested while in the hospital and its laboratory. The State suggests, however, that an outline of the relevant testing procedures normally followed by the hospital in such cases provided an adequate foundation for admission of the results of the tests from the medical records which are stored in the hospital computer and produced through its printouts.

Illinois Supreme Court Rule 236 (Ill. Rev. Stat. 1975, ch. 110A, par. 236) provides as follows:

> "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reason-

able time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility. The term 'business,' as used in this rule, includes business, profession, occupation, and calling of every kind.

(b) *This rule does not apply to the introduction into evidence of medical records or police accident reports.*" (Emphasis added.)

Section 115—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 115—5) provides as follows:

"(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

* * *

(c) *No writing or record made in the regular course of any business shall become admissible as evidence by the application of this Section if:*

(1) *Such writing or record has been made by anyone in the regular course of any form of hospital or medical business;* * * *.*" (Emphasis added.)

■■■ It is apparent that the foundation for the admission in evidence of medical records is not found in either the supreme court rule or the act relating to business records, as is suggested by the State. (See *People v. Gargano* (1973), 10 Ill. App. 3d 957, 295 N.E.2d 342.) It is also well established that, absent agreement of the parties, medical reports are not admissible without the foundation testimony of the persons who made the entries in the record. (*People v. Giovanetti* (1979), 70 Ill. App. 3d 275, 387 N.E.2d 1071; *Slater v. Missionary Sisters of Sacred Heart* (1974), 20 Ill. App. 3d 464, 314 N.E.2d 715.) The introduction into evidence of a hospital record with only the minimal sponsorship of the custodian would preclude examination of the qualifications of the physician or technician who there recorded his analysis, examination or procedures resulting in the conclusions noted in the record. So, too, must the care and custody of material or specimens which are the subject of such examinations be accounted for so as to meet questions of substitution, alteration, tampering or misidentification. See *People v. Schoo* (1977), 55 Ill. App. 3d 163, 165, 371 N.E.2d 86, 88.

In the present case the trial court admitted the medical records solely

on the testimony of the record custodian who was familiar only with normal procedures which were supposed to be followed, but had no personal knowledge relating to the contents of the records in question. No foundation evidence was offered from the persons who took the specimens, maintained their custody and care or actually analyzed them and made the findings seen in the record. These necessary requirements were all avoided by simply introducing in evidence the conclusions contained in the computer printout of the hospital records.

The State contends the foundation laid in this case is sufficient, or should be, to support the admission of medical records in evidence under an expanded concept of the business records exception to the hearsay rule. Adoption of that construction, however, would clearly be contrary to both the supreme court rule and the statute, which do not equate medical records with other business records. The State also looks to our opinion in *Casey v. Penn* (1977), 45 Ill. App. 3d 573, 360 N.E.2d 93, where the court considered Supreme Court Rule 236(b) and stated that it "allows the admission of hospital medical records where a proper foundation is laid." (45 Ill. App. 3d 573, 583, 360 N.E.2d 93, 100.) The court there determined, however, that a hospital report was properly excluded from evidence by the trial court for lack of foundation. The State suggests in the present case that the general foundation provided by the custodian of records is sufficient. However, the foundation alluded to in *Casey* by which the authenticity and admissibility of the test results may have been established in the present case would necessarily had to have been supplied by the persons making the analysis of the material tested and those who could account for its custody after being received from defendant and the child. See *Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 202, 367 N.E.2d 1238, 1242.

The admission into evidence of the computer printouts without adequate foundation and their consideration in establishing the *corpus delicti* requires reversal of defendant's conviction and a new trial. As defendant did not seek reversal of his conviction for insufficiency of the evidence, we do not consider that issue. (See *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.) Accordingly, the judgment is reversed and this cause remanded for a new trial.

Reversed and remanded.

VAN DEUSEN and WOODWARD, JJ., concur.