**Margaret Simmons, Administratrix with Will Annexed of Estate of Martin E. Simmons, Deceased, Appellant, v. South Shore Hospital, Appellee.**

Gen. No. 44,852.

Opinion filed March 8, 1950. Released for publication April 3, 1950.

FINN, TOLLKUEHN & SMITH and DELMAR J. HILL, all of Chicago, for appellant. LORD, BISSELL & KADYK, of Chicago, for appellee; GORDON R. CLOSE, LEONARD F. MARTIN, and CHARLES H. WEILAND, all of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a wrongful death action (Chap. 70, Sec. 1 and 2, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 38.01, 38.02] based on an injury suffered by a patient in defendant Hospital. The Court directed a verdict for defendant and plaintiff has appealed.

Martin Simmons suffered a heart attack in September of 1941 and was thereafter an invalid in his home. Late in 1941 and early in 1942, he spent about a week or ten days in the Hospital for various heart tests and a general check-up. Later in 1942 and again in 1944 he was in the Hospital overnight for routine check-ups. On August 1st, 1945, he again entered the Hospital for a check-up. He was at this time forty seven years old. The morning of August 2nd he was taken on a standard hospital cart to the Hospital X-ray laboratory. His chest was X-rayed, he was re-arranged on the cart and covered with a sheet and blanket. The X-ray technician left the laboratory on an errand. She was gone about two minutes. During her absence, decedent fell from the cart. He was found on the floor still wrapped in the covers. He suffered an injury to the left side of his forehead and a fracture of the right femur. He lapsed from semiconsciousness into unconsciousness and died fifty-five hours later on August 4th.

Plaintiff charges in count one of her complaint that defendant was negligent in failing to ''secure, support, guard, and attend,'' decedent and allowing him to be alone on the cart in the laboratory for an unreasonable length of time when he was nervous, weak, uncomfortable, and tangled in bedclothes. In count two she

155

charges defendant with negligence in failure to keep proper records of decedent's condition and failing to advise the agents in charge of him of his condition. The third count charges general negligence. The directed verdict was on each count.

Defendant is not a charitable institution and accordingly no question of its immunity from liability is involved. There is no question of the competence of defendant's agents nor that the Hospital cart was defective. There is no contention involving the handling of decedent in his room at the Hospital nor in moving him from his room to the laboratory on the cart.

 The question is whether the Court properly directed the verdict. We presume that the Court's ruling was proper and the plaintiff has the burden of showing that it was not. She claims that the question of defendant's negligence under counts one and two were for the jury, or that in any event the case should have gone to the jury on count three under the doctrine of *res ipsa loquitur*. The parties agree that we are to consider only evidence favorable to plaintiff, draw reasonable inferences therefrom in her favor, reject contrary evidence (*Mahan v. Richardson*, 284 Ill. App. 493) and decide whether there is any evidence fairly tending to prove the negligence alleged in counts one and two. *Johnson v. Bennett*, 395 Ill. 389. There cannot be both evidence of specific negligence and a *prima facie* case under *res ipsa loquitur*. *Wm. Wrigley, Jr. Co. v. Standard Roofing Co.*, 325 Ill. App. 210.

 Defendant owed Martin Simmons the duty of protection and was bound to use such reasonable care as his known condition required, but was not an insurer of his safety. *Maki v. Murray Hospital*, 91 Mont. 251, 7 P. 2d 228, 233; 41 C. J. S. pages 349, 350. Dr. Weimer, the attending physician was a member of defendant's staff and caused Simmon's admission to the Hospital. We shall assume from that fact, from de-

cedent's prior confinement and overnight stays in the Hospital, and the nineteen hours under defendant's care prior to the accident, that defendant knew or should have known of decedent's health record since 1941. There is no dispute about that record.

Since decedent's heart attack in 1941, he was confined to his bed at home. For a couple of years before his death, he used a 36 inch hospital bed and used a wheel chair to and from the bathroom. All this time he was subject to anginal attacks which increased in frequency and in intensity. His wife administered sedatives by pill and hypodermic. On occasion the anginal attacks caused him to "double up a few inches from the bed" to relieve the pain. His health progressively worsened. When he entered the Hospital in 1945, he weighed about 100 pounds. In the Hospital before the accident, his condition remained the same except that he was excited, apprehensive, and nervous about the X-ray. During the afternoon and evening of August 1st, and during the night and until the morning of August 2nd, he had recurring anginal attacks with sedatives administered, had a fever, had a poor appetite, had slept poorly, and had vomited less than an hour before the accident.

Neither the nurse who wheeled the cart to the laboratory on August 2nd nor anyone else gave instructions to the X-ray technician about handling Simmons. In the laboratory the technician had decedent sit on the edge of his cart and hold with his arms and on his thighs an X-ray film frame weighing 7½ pounds while the picture of his chest was being taken. In taking the picture the technician walked several feet to the X-ray switch on the wall and had decedent hold his breath for about two seconds during the taking of the picture. At this time a doctor came to the doorway and asked her to get him an X-ray picture. After the picture was taken, the technician placed the frame on the floor, and after plaintiff was rearranged on the cart, "something

157

less than two feet wide,'' re-covered him. In making up the cart a blanket first was laid on the bare top in such a way that it hung down evenly on both sides to a point about six inches from the floor. Then a mattress pad was laid on the blanket. This pad was about three and a half inches thick and the same size as the cart. On top of the pad was laid a sheet so as to hang down on both sides like the blanket. After the patient was placed on the sheet, the combined overhang of sheet and blanket from one side was brought over the patient and then the overhang from the other side. The result was that on top of the patient there were four layers of wrapping; from the body outward they consisted of sheet, blanket, sheet, and blanket.

After re-covering Simmons, the technician told him to lie quietly, placed the film in the dark room off one side of the laboratory, and hurried down a hall to an office fifty feet away to get the X-ray which the doctor had requested. During her absence of about two minutes, the accident occurred.

The question is whether there is any evidence in the record fairly tending to prove that the Hospital through the technician was guilty of violating its duty in failing to foresee, as a reasonably prudent person in the same business and with knowledge of Simmons' medical history and present condition, that it was probable that during the technician's absence of about two minutes, Simmons, in a sick, tired, and nervous condition would have an anginal attack impelling him to ''double up'' and in the attempt to ''double up,'' would be restricted by the blankets folded over him and, in the resultant struggle, fall from the cart.

Plaintiff insists that some reasonable minds would infer from the favorable evidence that under the circumstances the technician's duty was to watch the decedent while he was under her care and be in a position to prevent his falling from the cart. The de-

158

fendant points to the absence of expert testimony that decedent's previous medical record required greater care than decedent was given in the X-ray laboratory. No Illinois case has been cited or found which is close on the facts. We think that *Croupp v. Garfield Park Sanitarium,* 147 Ill. App. 7 cited by plaintiff is not persuasive. The predicament of the patient there was much different. Cases from other jurisdictions cited by defendant are helpful in understanding the general rule but have different factual situations.

We must not shut our eyes to the obvious consequences of imposing unreasonable burdens upon hospitals. Under a logical extension of plaintiff's view, the technician would not have been free to place the films in the tank in the darkroom off the laboratory without being negligent for she would not then have been in position to prevent Simmons from falling. We think that all reasonable minds should and would agree that the answer to the precise question is that the defendant had no obligation not to leave Simmons for about two minutes under the circumstances. Our conclusion is that the trial court did not err in directing a verdict on count one.

This conclusion effectually disposes of counts two and three. Count two based on failure to give notice falls because we have inferred notice in our discussion of count one. Count three based on *res ipsa loquitur,* falls because the accident was not one that would not ordinarily have happened were it not for defendant's negligence. This conclusion is not inconsistent with *Maki v. Murray Hospital,* 91 Mont. 251, 7 P. 2d 228; *Quillen v. Skaggs,* 233 Ky. 171, 25 S. W. 2d 33; and *Ybarra v. Spangard,* 25 Cal. 2d 486, 154 P. 2d 687. We conclude that the court's ruling was proper and the judgment is affirmed.

*Judgment affirmed.*

Lewe, P. J., and Burke, J., concur.