(No. 4577-

CLYDE LOVIN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 21, 1955.*

WILLIAM D. HANAGAN, Attorney for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

TOLSON, C. J.

On July 26, 1953, Clyde Lovin, while a volunteer patient at the Anna State Hospital, suffered an injury to his left hand. On October 6, 1953, he filed his complaint against the State of Illinois, alleging he was injured due to the negligence of a state employee.

The record in this case consists of the following: complaint, Departmental Report, transcript of evidence, statement, brief and argument of claimant, statement, brief and argument of respondent, reply brief of claimant, and Commissioner's Report.

The facts of the case are as follows:

Claimant, Clyde Lovin, was admitted to the Anna State Hospital on August 26, 1952, as a volunteer patient. He was classified as a "Sociopathic Personality Disturbance, Dyssocial Reaction". This was his third admission to the hospital. The previous two admissions were by committal of court.

On July 26, 1953, claimant was engaged in dusting a wall in the ward, and in so doing he placed his left hand into the frame of a hinged door, which a state employee, Lula Lambert, had opened to count out seven patients, who were reporting for a work detail. The door was equipped with an automatic closing device, and, not knowing that the patient had put his fingers between the door and frame, she permitted the door to close and shut automatically. As a result, the first two fingers of claimant's left hand were injured. Claimant's injuries consisted of the loss of the finger tips and nails of the index and middle finger. His hand was treated by an attending physician at the hospital, and claimant shortly thereafter served a fifteen day notice on the Superintendent of the Institution and was discharged.

The complaint consists of two counts—the first alleging negligence on the part of Lula Lambert, a state employee, in failing to notice that claimant was working in the vicinity of the door in question; and the second alleging wilful and wanton conduct on the part of Lula Lambert. Nothing in the record supports the second

count charging wilful and wanton conduct, and the Court, on its own motion, does hereby dismiss it.

Complainant seeks damages in the amount of $2,-500.00, and alleges that he has been forced to spend large sums for medical treatment, and will be required to spend large sums in the future for further treatment. In this regard, it appears from the transcript that claimant was treated five times by a Mt. Vernon physician after his discharge from the hospital, and that the total medical bill amounted to $14.00. This bill was not paid by claimant, but was, in fact, paid by the office of general assistance of Mt. Vernon township.

Claimant, therefore, to recover must establish negligence on the part of respondent, and prove that he was not guilty of contributory negligence.

At this point, it should be noted that claimant was a voluntary patient. He was not diagnosed as suffering from a mental illness, such as that it could be said, he was incapable of being guilty of contributory negligence.

Respondent argues that claimant has failed to establish negligence by a preponderance of the evidence, and that, in fact, by placing his hand into an open door, claimant was guilty of contributory negligence.

Claimant argues in his brief that the Court of Claims Act should be construed so that the words ''Sovereignty'' and ''Charity'' would be eliminated as a defense to any action in the Court of Claims, and, therefore, the degree of care required at the Anna State Hospital would be the same degree of care as that required in a private profit-making hospital.

Without passing on this theory advanced by claimant, the Court has examined some of the cases cited by claimant, and, in particular, the case of *Simmons* vs. *South Shore Hospital,* 340 Ill. App. 153, 91 N.E. (2d) 135.

In this case, the administrator of the estate of Martin Simmons brought suit against South Shore Hospital for the wrongful death of Martin Simmons, while he was a patient at said hospital. The patient had a previous record of heart trouble, and had been taken to the X-Ray room for pictures. Thereafter, he was placed on a hospital cart by a nurse, who left him alone for a few minutes. He fell from the cart, and sustained a broken femur and other injuries, and died a short time thereafter.

At the close of the case, the trial court directed a verdict for defendant, because of a failure to prove negligence, and, on appeal, the Court said:

"Defendant owed Martin Simmons the duty of protection, and was bound to use such reasonable care as his known condition required, but was not an insurer of his safety. *Maki* vs. *Murray Hospital*, 91 Mont. 251, 7 P. (2d), 228, 233; 41 C.J.S., Hospitals 8, pp. 349, 350.

We must not shut our eyes to obvious consequences of imposing unreasonable burdens upon hospitals. Under a logical extension of plaintiff's view, the technician would not have been free to place the films in the tank in the dark room off the laboratory without being negligent, for she would not then have been in a position to prevent Simmons from falling. We think that all reasonable minds should and would agree that the answer to the precise question is that defendant had no obligation not to leave Simmons for about two minutes under the circumstances. Our conclusion is that the trial court did not err in directing a verdict."

In the instant case, it would be unreasonable to assume that the attendant "knew", or "should have known", that a patient working nearby would place his fingers in a door casing between the opened door and the door jam.

Using the language of the Simmons case, "it would impose unreasonable burdens upon hospitals" to provide an attendant to watch a volunteer patient, who was not suffering from a mental illness, to see that he did not harm himself, while engaged in the simple task of dusting a wall.

The record does not disclose any acts of negligence on the part of the attendant. She opened the door to count out seven patients for a work detail. The door closed automatically. The inescapable conclusion is that the injury complained of was caused exclusively by the negligence of claimant, and an award cannot be allowed.

The claim is, therefore, denied.