MARJORIE J. PRINCE, Indiv. and as Ex'r of the Estate of Arthur C. Prince, Deceased, Plaintiff-Appellant, *v*. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant-Appellee.—(ELECTRIC MUTUAL, Intervening Plaintiff-Appellant.)

Third District No. 80-236

Opinion filed April 29, 1981.

R. Gerald Barris and Patrick V. Reilly, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellants.

William J. Voelker, Jr., and James C. Kearns, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Plaintiff appeals two orders of the circuit court of Tazewell County, one of which entered summary judgment for the defendant Atchison, Topeka and Santa Fe Railway Company (Santa Fe), and the second of which denied plaintiff leave to amend her complaint.

This cause has been on appeal once before and the factual situation is adequately set forth in the prior opinion. (*Prince v. Atchison, Topeka & Santa Fe Ry. Co.* (1979), 76 Ill. App. 3d 898, 395 N.E.2d 592.) It will be reiterated here only insofar as may be necessary for clarity.

Counts I and II were disposed of by the prior appeal. These were counts alleging wrongful death pursuant to section 2 of the Wrongful Death Act (Ill. Rev. Stat. 1975, ch. 70, par. 2) and are not involved in the current appeal. Count III sounded in the theory of negligent hiring and retaining, a common law tort. It had been severed from counts I and II prior to trial and this was affirmed in the prior appeal. On remand, Santa Fe filed a motion for summary judgment as to count III, and it was allowed by the trial court. This is the first issue on appeal.

The gist of Santa Fe's motion was that the appellate court found that Payton and McCasky were beyond the scope of their employment when the death occurred; that this finding was *res judicata* and the law of the case; that negligent hiring actions cannot exst if the injury complained of occurs while the employee is beyond the scope of his employment and not in the performance of a duty; and that therefore summary judgment was proper.

Plaintiff maintains, contra, that *res judicata* in this case would apply only if count III sounded in the theory of *respondeat superior*; that it does not; that it sounds in negligent hiring and retention; that the prior finding on appeal has no bearing on the instant count III; and that therefore summary judgment was improper.

We agree with the trial court and affirm. Otherwise, we would be extending the negligent-hiring tort theory into an area not yet sanctioned by prior authority. The power to make such an alteration in the common law of this State lies elsewhere than in this court.

Illinois recognizes the tort of negligent hiring. It has been applied, with limitations, in the master-servant relationship. More commonly, it has been applied in cases of independent contractors or where a special statutory situation existed.

The principal case dealing with the master-servant relationship is *Tatham v. Wabash R.R. Co.* (1952), 412 Ill. 568, 107 N.E.2d 735. In that case the plaintiff was severely beaten by a fellow employee who was known to the employer to be vicious, contentious, pugnacious and ill-tempered. He was also quarrelsome and frequently engaged in physical combats, and the employer knew when it hired him that he created an unreasonable danger to plaintiff and other employees. In upholding the complaint, the supreme court relied in party on section 213 of the Restatement (Second) of Agency (1958), and quoted a portion of Comment d to that section. Section 213(d) reads as follows:

"A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

\* \* \*

(d) In permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control."

It is thus apparent that the holding in *Tatham* is rather narrow, being limited to incidents which occur on the premises of the employer or with instrumentalities under his control. Such is obviously not the case at bar. We believe that it is also significant that the injury in *Tatham* was intentional.

Other jurisdictions have split widely on the question as to whether an employer is liable for hiring and retaining unfit and incompetent employees. It appears, however, that the majority of cases in which the rule has been applied involve either intentional torts or criminal conduct on the part of the employee. (See 53 Am. Jur. 2d *Master and Servant* §422 (1970).) Illinois, therefore, appears to follow the majority rule.

■■ In the instant case there is no contention that the conduct of Payton and McCasky was either intentional or criminal. In fact, all of the allegations against McCasky sound in negligence.

We have cited to *Insurance Company of North America v. Hewitt-Robbins, Inc.* (1973), 13 Ill. App. 3d 534, 301 N.E.2d 78, but we find it inapposite. The appellate court there stated that it could find no case involving the master-servant relationship, but apparently overlooked *Tatham*. It based its opinion on the independent contractor relationship. In such cases liability has generally been held to attach. *Tansey v. Robinson* (1960), 24 Ill. App. 2d 227, 164 N.E.2d 272; *Gomien v. Wear-Ever Aluminum, Inc.* (1971), 50 Ill. 2d 19, 276 N.E.2d 336.

The teaching of *Tatham* is reinforced by the Restatement (Second) of Torts (1965). While we do not regard it as precedential, it is persuasive when read with *Tatham*. Section 317 reads as follows:

"A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant
(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
(b) the master

> (i) knows or has reason to know that he has the ability to control his servant, and
> (ii) knows or should know of the necessity and opportunity for exercising such control."

In the instant case the record is plain that the accident did not occur on the premises of the employer, and that the instrumentality (McCasky's truck) was not under the employer's control. Summary judgment was proper.

The second aspect of this appeal is procedural. In addition to her action for wrongful death against the Santa Fe and McCasky (a judgment against him under count I remains undisturbed by either this, or the prior appeal), plaintiff filed dramshop suits against the taverns which furnished intoxicants to the decedent and the other employee pursuant to section 14 of the Dramshop Act (Ill. Rev. Stat. 1979, ch. 43, par. 135). On plaintiff's motion to consolidate these suits with count III of the wrongful death action, the trial court entered an order of consolidation on February 28, 1980. On March 18, 1980, after remaind, the trial court entered summary judgment for the Santa Fe on count III as previously indicated. After this order was entered and on the same day, and apparently as part of the same proceeding, plaintiff moved to amend her complaint by adding counts IV and V. These were brought in her individual capacity, and were based upon a violation of Rule VI(1) and (5) of General Order 194 of the Illinois Commerce Commission. The theory was violation of section 7 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 81) as expounded in *Churchill v. Norfolk & Western R.R. Co.* (1978), 73 Ill. 2d 127, 383 N.E.2d 929. The *Churchill* decision has been handed down while the prior appeal in the instant case was pending. The trial court denied the motion, stating:

> "It is further ordered that plaintiff's motion to amend, filed after the Court's ruling on defendant Santa Fe's Motion to Summary Judgment is denied. It is further ordered that the Court's order is not final and appealable until disposition of the cases with which Count III is consolidated."

A motion to reconsider was denied on April 24, 1980, and the dramshop suits were afterwards settled, and those defendants dismissed.

The parties have debated at some length in their briefs the application of the statute of limitations. The plaintiff claims that counts IV and V arose out of the same transaction and therefore the amendment relates back and is proper. Santa Fe asserts that the dramshop suits, and the wrongful death actions, were required to be brought in plaintiff's representative capacity; that the public utilities suit was tendered in her individual capacity and is therefore a new action and barred by the statute. Plaintiff also relies on the language of the trial court quoted above in

arguing that the summary judgment order was not final. We regard the court's negative finding under Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)) as a nullity. The statute of limitations under section 46(2) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 46(2)) is not significant in our disposition.

■■ Any amendment, particularly a late amendment, is addressed to the sound discretion of the trial court. (*United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 387 N.E.2d 1272; *Anger v. Gottfried* (1975), 29 Ill. App. 3d 559, 331 N.E.2d 576.) In the exercise of that discretion the trial court may consider the nature of the proposed amendment. (*Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 193 N.E.2d 833.) As previously indicated, the proposed amendment here sounded in violation of certain rules under General Order 194 of the Illinois Commerce Commission. General Order 194 is captioned:

> "RULES, REGULATIONS AND REQUIREMENTS GOVERNING MOTOR VEHICLES USED BY COMMON CARRIERS BY RAIL TO TRANSPORT EMPLOYEES TO AND FROM THEIR PLACES OF EMPLOYMENT OR DURING THE COURSE OF THEIR EMPLOYMENT."

Rule I(1) of the General Order delineates the purpose, scope, and application of the Order as follows:

> "The purpose of this Order is to prescribe regulations establishing minimum standards for the safe transportation of employees to and from their places of employment and during the course of their employment."

The prior appeal in this cause determined finally that this tragic accident occurred without and beyond the scope of the employment of the decedent and his fellow employee. The General Order and Rule I(1) thereunder show on their faces that the rules will regulate only activity coming within the scope of employment. No cause of action could be stated under this General Order.

Moreover, we find the specific rules alluded to by plaintiff irrelevant in view of the purpose of the order as set forth above. Those rules read as follows:

> "VI—Drivers, Operation, Employees' Duties
>
> 1. Only authorized, experienced, competent, qualified and licensed drivers, not less than 18 years of age, shall be permitted to operate vehicles used to transport employees.
>
> * * *
>
> 5. All vehicles transporting employees shall observe all Motor Vehicle Laws of this state."

These cannot, and should not, be read in a vacuum apart from the purpose of the rules. It is also apparent that the Order and the rules were

devised for the protection of employees and not for that of third persons.

For the foregoing reasons, the orders of the circuit court of Tazewell County are affirmed.

Affirmed.

TRAPP, P. J., and GREEN, J., concur.