JOY TAYLOR, Special Adm'r of the Estate of William O. Mefford, Plaintiff-Appellant, v. THE CITY OF BEARDSTOWN et al., Defendants-Appellees.

Fourth District   No. 4—85—0438

Opinion filed March 31, 1986.

586

Costello, Long, Young & Dvorak, Ltd., of Springfield, for appellant.

Heyl, Royster, Voelker & Allen, of Springfield (Kevin L. Mechler and Kent L. Plotner, of counsel), for appellee R.A. Spencer.

McConnell, Kennedy, Quinn & Johnston, Chartered, of Peoria (Murvel Pretorius, Jr., and Troy L. Daugherty, of counsel), for other appellees.

JUSTICE MORTHLAND delivered the opinion of the court:

This appeal arises out of an order entered by the circuit court of Cass County denying plaintiff's motion for leave to amend her complaint and granting summary judgment in favor of all defendants. For the reasons stated below, we affirm.

The record discloses that the plaintiff's decedent, William O. Mefford (the decedent), was admitted to the defendant Beardstown Hospital on February 10, 1981, apparently after suffering an epileptic seizure. On February 13, 1981, decedent fell from his hospital bed and

suffered a broken left hip. He had also reportedly fallen from the bed two days earlier, when he incurred a small abrasion on the bridge of his nose. Decedent later died on June 25, 1982.

Plaintiff Joy Taylor, acting as special administrative of the estate of William O. Mefford, filed her original complaint on February 10, 1983. She sought recovery from all four defendants under the Wrongful Death Act (Ill. Rev. Stat. 1983, ch. 70, par. 1 *et seq.*) and the Survival Act (Ill. Rev. Stat. 1983, ch. 110½, par. 27—6). The trial court granted the defendants' motion to strike and dismiss that complaint on July 20, 1983. An amended complaint was thereafter filed on August 29, 1983. Once again, upon motion of the defendants, the trial court dismissed the complaint on October 17, 1983, with leave to amend. A second amended complaint was filed by the plaintiff on November 15, 1983, to which the defendants filed answers.

The second amended complaint essentially alleged that defendants city of Beardstown and Beardstown Hospital failed to provide personnel to attend to the decedent before he fell, when decedent was suffering from dizziness and lack of balance; employed incompetent and untrained personnel; failed to provide necessary preventive measures and safeguards to avoid the injuries sustained by the decedent; failed to provide bedrails and restraints; and failed or refused to render immediate and necessary treatment to the decedent after he fell.

Plaintiff further alleged in her second amended complaint that defendant Dr. R.A. Spencer, the admitting physician, negligently failed to instruct the hospital staff to ensure that necessary safeguards were employed; failed to employ necessary preventive measures to avoid the injury sustained; failed to direct that bedrails and restraints be employed; and failed to properly tend to and appreciate the extent of the decedent's injury.

As to the defendant George Cook, a nurse's aid at the hospital, the second amended complaint alleged that he failed to ascertain that the decedent was suffering from dizziness and loss of balance; failed to employ necessary preventive measures to protect the decedent from falling; failed to use bedrails and restraints to confine the decedent to his bed; failed to support and hold the decedent steady; and failed to timely notify medical personnel so as to allow prompt treatment of the decedent after his fall.

Plaintiff also made the bald assertion that as a "direct and proximate result of the aforesaid wrongful acts and omissions," William O. Mefford died. However, there are no allegations supporting any causal link between the broken hip suffered in February 1981 and decedent's death in June of 1982.

Defendant Dr. Spencer filed a motion for summary judgment on April 13, 1984; that motion was denied. Defendants city of Beardstown, Beardstown Hospital and George Cook later filed their motion for summary judgment on January 4, 1985. Dr. Spencer filed another such motion on January 21, 1985.

On March 25, 1985, the day before the hearing on all defendants' motions for summary judgment, plaintiff filed a response to those motions as well as a motion for leave to file an amendment to plead *res ipsa loquitur*. The court on March 26 denied plaintiff's motion to amend her second amended complaint and granted summary judgment in favor of all defendants. The court found that the defendants had established the standard of care applicable to them and had shown that they had met this standard; plaintiff, on the other hand, had failed to show any standard of care and had failed to present any competent evidence in rebuttal.

Plaintiff thereafter filed a motion for reconsideration as well as a motion for leave to file additional documentation on April 24, 1985. During a hearing held concerning plaintiff's motion to reconsider on June 3, 1985, the trial judge stated he believed the *res ipsa* count "didn't raise anything new" because "everything alleged in the amended complaint was known to the parties long before or should have been known to them even long before discovery was started, let alone completed ***." The court noted it exercised its discretion in refusing to allow amendment of the complaint, as any other result would have the practical effect of merely "prolonging the case unnecessarily." However, the court did grant the plaintiff's motion to file additional documentation. Also, the court ordered that a copy of the proposed amendment be made a part of the record. An amended order containing the court's findings, granting summary judgment as to all four defendants, and denying plaintiff leave to file an amendment, was entered that same day.

Plaintiff appeals, contending that: (1) the trial court erred in denying her motion for leave to file an amended complaint to plead *res ipsa loquitur*; (2) she was not required to submit expert testimony as to the applicable standard of care in response to the defendants' motion for summary judgment; and (3) the trial court erred in granting summary judgment as to the defendants because plaintiff had raised genuine issues of material fact.

■■ ■ We first consider plaintiff's contentions regarding the denial of her motion to file a third amended complaint to plead *res ipsa loquitur*. Under the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 1—101 *et seq.*), amendments to pleadings are to be liberally

allowed to enable the party to fully present his or her case. (*Scala/ O'Brien Porsche Audi, Inc. v. Volkswagen of America, Inc.* (1980), 87 Ill. App. 3d 757, 762, 410 N.E.2d 205, 208.) The granting or denying of any amendment, particularly a late amendment, is addressed to the sound discretion of the trial court. (*Prince v. Atchison, Topeka & Santa Fe Ry. Co.* (1981), 95 Ill. App. 3d 856, 860, 420 N.E.2d 737, 740.) A court may permit amendment to a complaint at any time before final judgment. (*Richardson v. Economy Fire & Casualty Co.* (1984), 126 Ill. App. 3d 520, 523, 467 N.E.2d 317, 320, *rev'd on other grounds* (1985), 109 Ill. 2d 41, 46, 485 N.E.2d 327, 329; Ill. Rev. Stat. 1983, ch. 110, par. 2—616(a).) The decision of a trial court as to whether to permit amendment is a matter of judicial discretion and will not be disturbed on appeal absent an abuse of such discretion. (*Intini v. Schwartz* (1979), 78 Ill. App. 3d 575, 579, 397 N.E.2d 84, 87.) The test to be applied in this regard is whether the ends of justice are being furthered by allowing the amendment or rejecting it. *Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 281, 193 N.E.2d 833, 840; *Economy Fire & Casualty Co. v. Pearce* (1979), 79 Ill. App. 3d 559, 399 N.E.2d 151; 30 Ill. L. & Prac. *Pleading* sec. 104 (1957).

■■ ■ In passing on a motion to amend, a court should properly consider the ultimate efficacy of a claim as well as previous opportunities to assert it. (*Bowman v. County of Lake* (1983), 29 Ill. 2d 268, 193 N.E.2d 833; *City of Des Plaines v. Pollution Control Board* (1978), 60 Ill. App. 3d 995, 377 N.E.2d 114.) Thus, the merits of a proposed amendment should be considered, and a trial court should not deny leave to amend solely on the basis of a delay in filing, unless accompanied by a showing of prejudice to the opposing party which goes beyond mere inconvenience. (*Cvengros v. Liquid Carbonic Corp.* (1981), 99 Ill. App. 3d 376, 425 N.E.2d 1050; *Bonanno v. La Salle & Bureau County R.R. Co.* (1980), 87 Ill. App. 3d 988, 409 N.E.2d 481.) If, on the other hand, the proposed amendment as submitted to the trial court would not cure any defects in the complaint, then a motion for leave to amend is properly denied. *Kittay v. Allstate Insurance Co.* (1979), 78 Ill. App. 3d 335, 339, 397 N.E.2d 200, 203.

Plaintiff argues that the theory of *res ipsa loquitur* was not advanced in her previous amendments to the initial complaint because its applicability only became apparent through discovery. Plaintiff urges that this amendment would cure any defects in her cause of action, while the defendants would not be in any way prejudiced. Defendants, on the other hand, argue that the plaintiff had ample opportunity to formulate and discover a proper cause of action, that the addition of a *res ipsa* count adds nothing to the plaintiff's cause of

action as already considered, and that the trial court did not abuse its discretion because plaintiff has failed in any event to raise an inference of negligence under *res ipsa loquitur*.

■ Our decision in this area also requires a discussion of the doctrine of *res ipsa loquitur* in medical malpractice actions. The doctrine has been routinely held applicable to such actions. (*Walker v. Rumer* (1978), 72 Ill. 2d 495, 500, 381 N.E.2d 689.) *Res ipsa loquitur* involves a species of circumstantial evidence permitting the trier of fact to draw an inference of negligence (*Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 11, 452 N.E.2d 751, 758); the doctrine permits circumstantial evidence as proof of negligence where direct evidence is primarily within the control of the defendant (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 304-05, 312 N.E.2d 259). Once properly invoked, the doctrine operates to shift the burden of going forward with the evidence to the defendant, though any presumption of negligence may then be rebutted by the defendant. *Walker v. Rumer* (1978), 72 Ill. 2d 495, 381 N.E.2d 689; *McLaughlin v. Rush-Presbyterian St. Luke's Medical Center* (1979), 68 Ill. App. 3d 546, 386 N.E.2d 334.

■■ ■ A plaintiff must establish the elements of *res ipsa loquitur* to accede to the benefits of this doctrine. As such, a plaintiff must demonstrate that he or she was injured: (1) in an occurrence which would not ordinarily occur absent some negligence; (2) by an instrumentality or agency within the management or control of the defendants; and (3) under circumstances indicating the injury was not due to any voluntary act on the part of a plaintiff. (*Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 443 N.E.2d 569; *Cassady v. Hendrickson* (1985), 138 Ill. App. 3d 925, 486 N.E.2d 1329.) The doctrine, however, does not affect the necessity or manner of proof of proximate cause; it is relevant only to the nature of proof from which the trier of fact may draw an inference of negligence. (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259; *McMillen v. Carlinville Area Hospital* (1983), 114 Ill. App. 3d 732, 736, 450 N.E.2d 5, 9.) Such an inference cannot be based solely upon the fact of a rare and unusual result. (*Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 13, 452 N.E.2d 751, 759.) To submit a *res ipsa* claim to a jury, there must be evidence or testimony to establish the rare and unusual event or condition coupled with proof of a negligent act. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 10, 402 N.E.2d 216, 220; *Cassady v. Hendrickson* (1985), 138 Ill. App. 3d 925, 486 N.E.2d 1329.

■ Backing up somewhat, the trial court must still, in the first

instance, decide whether as a matter of law the *res ipsa loquitur* doctrine applies at all. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 402 N.E.2d 216; *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 349, 247 N.E.2d 877.) The doctrine will not apply unless a duty of care is owed by the defendant to the plaintiff, and it is established that a breach of duty occurred when the defendant did not measure up to the applicable standard. (*Taber v. Riordan* (1980), 83 Ill. App. 3d 900, 403 N.E.2d 1349.) Thus, to invoke the doctrine, a proper foundation must be alleged and the elements established. Of particular importance in pleading *res ipsa* is the first element, involving results which would not ordinarily occur were it not for the negligent conduct of the defendant. That element will be established either by presenting expert testimony to that effect, or else by showing the complained of conduct was so grossly remiss that it falls within the common knowledge and understanding of nonmedical persons, thereby obviating the need for expert evidence.

Viewing the plaintiff's proposed amended complaint, and considering the ultimate efficacy of the claim, it appears to us that the amendment contains one fatal defect: that of failure to allege the first element under *res ipsa loquitur*. Plaintiff has asserted that the fall and injury would not have occurred in the absence of gross negligence by the defendants. The primary focus of this matter thus centers upon whether a confused and elderly patient, who had apparently fallen from his bed previously, should have been somehow restrained, and whether any failure to restrain proximately caused the injury. Therefore, we must be concerned with the standard of care in such situations.

It is undisputed that plaintiff has offered no testimony or evidence concerning the applicable standard of care. Plaintiff merely argues that the decedent was admitted in a confused and hostile state, and since he was under the management and control of the defendants, the burden is on them to show freedom from negligence. Plaintiff urges that whether bedrails or even restraints should have been utilized on the decedent in his condition, in light of the first fall two days previous, is a matter of common knowledge which could be decided by laymen. Plaintiff concludes that this cause should therefore be allowed to go before a jury.

We disagree with plaintiff's contentions. First, the burden is only on the defendant to go forward with the evidence once *res ipsa* is established. Plaintiff must still present proof from which an inference of negligence may be drawn. Again, plaintiff must prove the first element, that the injury would not have occurred but for some negligent

act by the defendants, by at least establishing a minimal standard of care.

▬ Continuing, we must examine plaintiff's related argument, that this matter falls within the "gross negligence" exception to presenting expert evidence in a medical malpractice case. As a general rule in Illinois, it is incumbent upon the plaintiff in a medical malpractice case to establish by expert testimony the standard of care imposed upon the defendant (*Chamness v. Odum* (1979), 80 Ill. App. 3d 98, 106, 399 N.E.2d 238, 245) and then to show by affirmative evidence that an unskilled or negligent failure to comply with these standards caused injury to the plaintiff (*Bakos v. Russell* (1977), 49 Ill. App. 3d 539, 541, 364 N.E.2d 581). A clear exception exists when the negligence is so grossly apparent or the treatment so common that a lay person, armed with his or her everyday ordinary knowledge, could readily appraise it. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 242; *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 381 N.E.2d 279; *Metz v. Fairbury Hospital* (1983), 118 Ill. App. 3d 1093, 455 N.E.2d 1096.) Thus, a plaintiff need not rely upon the testimony of an expert, and may invoke the doctrine of *res ipsa loquitur*, where it is common knowledge that the injury complained of would not have occurred in the absence of negligence. *Ybarra v. Cross* (1974), 22 Ill. App. 3d 638, 645, 317 N.E.2d 621.

▬ In our judgment, this is not such a case. Plaintiff's cause of action focuses on a lack of supervision, and specifically a lack of restraints, in light of the decedent's condition. The decision of how and when to restrain someone, albeit it for their own good, is not one to be lightly made. We do not view this as normally within the everyday knowledge and experience of most lay persons. It may indeed take some expert knowledge, skill, or training to determine when the final step of physical restraint should be undertaken. There also remains the question of how a patient should be restrained. Should restraints merely be used across a patient's chest, or should the legs and arms also remain secured? Under what circumstances would these alternatives be appropriate? Granted, a restraint may be appropriate for the patient's own good where he or she is confused or unsteady. Nevertheless, we could envision circumstances where a patient, strapped down merely by chest restraints, could free himself without the negligence of anyone. Moreover, we do not view this as a matter involving gross negligence, as the plaintiff advocates.

▬ In sum, we hold that the trial court did not abuse its discretion in denying plaintiff leave to amend her complaint to plead *res ipsa loquitur*. Plaintiff simply did not raise anything new in her pro-

posed amendment. She had ample time to amend to raise this issue, but failed to do so. Plaintiff only raised the doctrine the day before the hearing on all defendants' motions for summary judgment. Nothing was introduced to raise any inference of negligence, and the mere showing of a bad result does not in all instances mean someone was negligent. (*Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50.) In *Simmons v. South Shore Hospital* (1950), 340 Ill. App. 153, 91 N.E.2d 135, a patient in a hospital suffered injuries when he fell from a cart while awaiting an X ray. The lab technician left the patient, who had a history of heart trouble, unattended for two minutes when the accident occurred. The patient died as a result a little over two days later. The trial court directed a verdict for the defendant. On appeal, the court held that the count sounding in *res ipsa loquitur* failed to state a cause of action because the accident was not one which would not ordinarily have occurred but for the negligence of someone. 340 Ill. App. 153, 159, 91 N.E.2d 135.

Plaintiff, nevertheless, cites a Missouri case which involved an action to recover injuries when an elderly patient fell from her hospital bed and broke her hip. In *Howard v. Research Hospital & Medical Center, Inc.* (Mo. App. 1978), 563 S.W.2d 111, the patient in question was disorientated, dizzy, and sedated due to loss of blood and a sleeping medication. The patient had fallen to the floor once before; the nurse who found her that time put her back in bed and, upon her own decision, applied a posey restraint across her chest. The patient was later found on the floor, this time with a broken hip. The court held that a lay juror would know whether a properly placed posey restraint would prevent the patient from getting out of bed, and whether more supervision would have prevented the fall. The court thus concluded that expert testimony was not necessary, and the case was properly submitted to a jury. However, the issue in *Howard* involved whether a restraint was properly applied. *Howard* was not concerned with when a decision to restrain should be made, and subsequently how the patient should be restrained.

■■■ We now turn to whether the trial court properly granted summary judgment as to all defendants under the complaint as it existed. We note in passing that summary judgment should only be granted when, in considering the affidavits, depositions, admissions, exhibits, and pleadings on file, there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. (*Purtill v. Hess* (1986), 111 Ill. 2d 229; *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50; Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) The court has a duty to construe the evidence

strictly against the moving party and liberally in favor of the nonmovant. (*Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 472, 420 N.E.2d 810, 811.) A triable issue precluding summary judgment exists where there is a dispute as to material facts or where, the material facts being undisputed, reasonable persons might draw different inferences from those facts. (*Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, 240 N.E.2d 699.) While use of summary judgment aids in the expeditious disposition of a lawsuit (*Purtill v. Hess* (1986), 111 Ill. 2d 229), it is nonetheless a drastic means of disposing of litigation, and therefore should be allowed only when the right of the moving party is free from doubt and determinable solely as a question of law. *Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 1016, 436 N.E.2d 598, 602; *Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 374 N.E.2d 1147.

■■ ■ It is well established that a hospital's duty to its patients requires it to conform to the legal standard of reasonable conduct in light of the apparent risk. (*Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 303 N.E.2d 392.) While a hospital is not an absolute insurer of a patient's safety, it owes him a duty of protection and must exercise a degree of reasonable care as his known condition requires. (*Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877.) A plaintiff must prove that a hospital failed to comply with the standard of proper care which guides institutions holding themselves out as devoted to the care and saving of human life, and that this failure resulted in the injury complained of. (*Scardina v. Colletti* (1965), 63 Ill. App. 2d 481, 211 N.E.2d 762.) The standard of care a hospital is held to is the accepted standard of care within the medical community. (*Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 718, 399 N.E.2d 198, 205.) Not only may expert medical testimony establish the applicable standard of care, but regulations, standards, and hospital bylaws are also admissible on the issue. (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204.) Furthermore, as we stated earlier, expert testimony is not necessary to establish the standard of care where the conduct of the defendant is so grossly negligent or the treatment so common that a lay person could readily appraise it.

Plaintiff complains that the care and supervision afforded the decedent by the hospital and its nursing staff was insufficient, in light of the circumstances, to prevent him from falling and suffering the injury complained of. The decedent was admitted to the hospital on February 11, 1981, apparently after suffering an epileptic seizure,

with the following diagnosis: "post-traumatic epilepsy with old severe injury, recurrent severe migraine, anxiety syndrome with probable mild depression." Again, according to hospital records, decedent fell off his bed first on February 11. Restraints were ordered by Dr. Spencer on the day of the second fall, although it is unclear whether such restraints were ordered before or after the injury. Deposition testimony of the only person present in the room at the time indicated she could not recall for certain whether decedent was restrained. Apparently, though, bedrails were being utilized; the hospital in its answers to interrogatories stated the decedent fell when he attempted to leave his bed between the side rails.

While plaintiff in this respect is alleging ordinary negligence, we again encounter a situation where plaintiff has simply offered no evidence to establish a standard of care. We do not believe this is a matter within the common knowledge of lay persons. On the other hand, the affidavit of Mary C. Mulcahy, assistant professor and director of the nursing program at Sangamon State University, Springfield, was attached to the defendants' motion for summary judgment. The affidavit stated Mulcahy had reviewed the records of Beardstown Hospital, and that she was familiar with the degree of knowledge, skill and care required of hospitals and nursing staffs in Beardstown and similar communities. Based upon a reasonable degree of certainty, it was her opinion that the nursing staff and employees of the defendant hospital met the standard of care applicable to nursing staffs in like hospitals under like circumstances. Plaintiff offered no evidence in rebuttal. The trial court found Mulcahy qualified as an expert witness, and granted summary judgment based upon her affidavit.

Plaintiff maintains that a material issue of genuine fact has been raised, and summary judgment was improperly entered. She argues that the real issues here, failure to adequately supervise the decedent based upon his medical diagnosis and condition, and failure to use available restraints to insure that the decedent did not fall and injure himself, were neither addressed nor rebutted in the Mulcahy affidavit.

However, the cases plaintiff cites to support her position on appeal are unavailing. In *Block v. Michael Reese Hospital* (1981), 93 Ill. App. 3d 578, 417 N.E.2d 724, the plaintiff fell when she was apparently left unattended at a nurses' station. In *Block*, the defendant hospital's own rules, adopted for the convenience and safety of its patients, were admitted to show that an escort is required to stay with a patient at the nurses' station. The court noted that, although hospital regulations and standards do not conclusively determine a stand-

ard of care owed, an examination of the facts revealed the defendant had a duty to act reasonably, and to safely return the plaintiff to her room. The court held that the record reflected competent evidence that the hospital failed in its duty, and directed a verdict for the plaintiff. In the matter presently before us, on the other hand, plaintiff has offered nothing to show a standard of care which, taken in conjunction with the facts, might reveal a breach of that standard. Similarly, plaintiff cites *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198. In *Johnson*, though, plaintiff also introduced hospital bylaws and testimony of a qualified medical expert to establish a hospital's duty to use reasonable effort. In *Pietrucha v. Grant Hospital* (7th Cir. 1971), 447 F.2d 1029, also relied upon by the plaintiff, the court held the hospital failed to exercise ordinary and reasonable care to safeguard him against his own suicide where the hospital knew he was admitted suffering from extreme depression and suicidal tendencies. The matter before us now, though, is not such an extreme case.

■■■ Finally, plaintiff argues that the Mulcahy affidavit should not have been considered in ruling on summary judgment because it contains conclusions rather than facts. The affidavit stated that, based upon her review of the record, it was her opinion that the defendant hospital and staff exercised all reasonable care under the circumstances. The sufficiency of affidavits offered in support of or in opposition to a motion for summary judgment is governed by Supreme Court Rule 191 (87 Ill. 2d R. 191), which states that summary judgment affidavits shall be made upon the personal knowledge of the affiant, shall not consist of conclusions but of facts admissible in evidence, and shall affirmatively show that the affiant, if sworn as a witness, could competently testify as to the facts set forth therein. (87 Ill. 2d R. 191(a).) Although the affiant could have disclosed more facts upon which her opinion was based, we nevertheless believe the affidavit is sufficient for purposes of the defendants' motions for summary judgment herein. An expert is permitted in Illinois to state an opinion on the ultimate issue. *Perschall v. Metropolitan Life Insurance Co.* (1983), 113 Ill. App. 3d 233, 237, 446 N.E.2d 570, 573.

We note that in Illinois, where facts contained in an affidavit in support of a motion for summary judgment are not contradicted by a counteraffidavit, then such facts are admitted and must be taken as true. *Heidelberger v. Jewel Co.* (1974), 57 Ill. 2d 87, 92-93, 312 N.E.2d 601, 604.

Plaintiff here failed in any way to rebut the affirmative evidence proffered by the defendants. While evidence as to a hospital's stand-

ard of care may be derived from a variety of sources (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253), plaintiff has simply failed to produce any evidence whatsoever to establish the standard of care or any deviation therefrom. We therefore hold that summary judgment as to defendants city of Beardstown, Beardstown Hospital, and George Cook was properly granted.

██ Plaintiff, however, apparently attempted to make a late introduction of evidence on an applicable standard of care in her June 3, 1985, motion for leave to file additional documentation, which the court allowed. Plaintiff merely filed a 12-page photocopy of recommended standards regarding patient accommodations and care without citing any relevant provisions or how they were breached by the defendants in this case. Essentially, the documents contained statements that restraints should be made available, and written policies established for their use, in regard to ordinary and psychiatric services. Such mere broad statements, without reference to particular provisions or specific precautions, cannot serve as a basis to defeat a summary judgment motion. The court should not be required to sift through such documentation to provide what the plaintiff should have provided in the first place. *Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 463 N.E.2d 216.

██ Next, we turn to the final matter before us, whether the trial court properly granted summary judgment as to defendant Dr. Spencer. Attached to Dr. Spencer's motion were the defendant's own affidavit as well as excerpts from the deposition of Dr. James M. Hayes. Dr. Spencer's affidavit stated he was familiar with the standard of care applicable to Beardstown and similar communities, and that the treatment and care rendered by him to the decedent was in compliance with that standard. Dr. Hayes stated, based upon his familiarity with the degree of care of a reasonable physician in the community, that he essentially had no criticism of the defendant's care of the decedent. Plaintiff contends that these attachments should not have been considered as proof of the applicable standard of care or evidence that the defendant did not violate the standard.

In a medical malpractice case, the burden is on the plaintiff to prove the elements of the cause of action, including the proper standard of care against which the defendant-physician's conduct is to be measured, an unskilled or negligent failure to comply with the applicable standard, and a resulting injury proximately caused by that want of skill or care. (*Purtill v. Hess* (1986), 111 Ill. 2d 229; *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 381 N.E.2d 279; *Borowski v. Von*

*Solbrig* (1975), 60 Ill. 2d 418, 423, 328 N.E.2d 301.) In determining the standard of care, Illinois courts have followed the "similar locality" rule, which requires a physician to exercise such care and diligence as a good practitioner in the same or similar communities would under same or similar circumstances. *Purtill v. Hess* (1986), 111 Ill. 2d 229; *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, 458 N.E.2d 1072.

We have already determined that some expert testimony or evidence should have been presented to establish the applicable standard of care. Without any such evidence by the plaintiff, unsupported allegations in a complaint cannot raise factual issues where the affidavits and depositions which support a motion for summary judgment are to the contrary. (*Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 727, 369 N.E.2d 1346.) Plaintiff still maintains, though, that the defendant's own assertion by affidavit is insufficient to establish the standard of care, and should not have been considered by the court in ruling on the summary judgment issue.

The law, however, is clearly to the contrary. Illinois courts have repeatedly held that, where a defendant-doctor submits his own affidavit as evidence of the applicable standard of care in support for his motion for summary judgment, and where the plaintiff has failed to bring forth evidence to the contrary even though afforded ample time to do so, then such an affidavit is sufficient for entry of summary judgment in favor of the physician. *Goldstein v. Kantor* (1981), 101 Ill. App. 3d 264, 427 N.E.2d 1322; *Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 420 N.E.2d 810; *Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 374 N.E.2d 1147; see also *Heidelberger v. Jewel Co.* (1974), 57 Ill. 2d 87, 312 N.E.2d 601.

Moreover, plaintiff's reliance on the case of *Practical Offset, Inc. v. Davis* (1980), 83 Ill. App. 3d 566, 404 N.E.2d 516, is patently incorrect. *Practical Offset* involved a *legal* malpractice action in which the defendant-attorney submitted his own deposition testimony that he performed with the skill and care of a reasonably competent attorney in the same community. The court in *Practical Offset* held that the defendant's own deposition could not be used to create a genuine issue of material fact, as it was self-serving, represented little more than a denial otherwise contained in the defendant's answer, and was totally without factual basis. The court itself in *Practical Offset* distinguished *medical* malpractice cases, noting that where a plaintiff fails to demonstrate negligence by expert testimony, or where the issue is clearly one that could not be determined by laymen alone, then no ba-

sis would exist for rejecting a defendant physician's affidavit, and summary judgment could be granted. (83 Ill. App. 3d 566, 573, 404 N.E.2d 516.) Furthermore, the defendant-attorney in that case offered his own deposition testimony in response to the *plaintiff's* motion for summary judgment.

We therefore hold that the plaintiff herein has also failed to establish any standard of care as to the defendant doctor, where the issue was not one which could be normally viewed by laymen, and summary judgment was properly granted based upon the physician's own uncontradicted affidavit. Thus, we express no opinion as to whether the deposition testimony of Dr. Hayes that he had no criticism of the care rendered the decedent would be otherwise sufficient.

In summary, then, plaintiff has not introduced any evidence whatsoever of a duty, standard of care, or breach of duty. Plaintiff has simply failed to bring forth anything to support what she contends is a viable cause of action, although the trial court gave her every opportunity to do so before granting summary judgment. Accordingly, we affirm the entry of summary judgment in favor of all defendants, as well as the denial of plaintiff's motion for leave to amend.

Affirmed.

McCULLOUGH, P.J., and SPITZ, J., concur.