## Quillen v. Skaggs.

(Decided February 21, 1930.)

172

STEPHEN COMBS, JR., for appellant.

F. J. EVERSOLE and ASTOR HOGG for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

Eliza Quillen sued Dr. H. R. Skaggs for $3,000 alleged damages resulting to her from a burn she received while under the influence of an anæsthetic. At the conclusion of her evidence, the court directed the jury to find for the defendant, and she appeals.

In the petition it is alleged that Dr. Skaggs at the times named in the petition was a physician and surgeon, and as such conducted and operated a hospital at Fleming in Letcher county, Ky. The doctor does not deny this.

In failing to deny this charge in Miss Quillen's petition, the doctor admits he is the proprietor of a hospital. Plaintiff alleges that on or about June 20, 1928, she had an attack of appendicitis, and employed defendant as a physician and surgeon to operate on her and treat her therefor, and that he did so, and that during the operation and afterwards, and while she was under the influence of an anæsthetic administered to her by the defendant, he negligently placed, or permitted to be placed, under her body a bottle containing hot water, and negligently and carelessly permitted said hot-water bottle to be and remain under her body during the operation and afterwards, thereby burning her back, body, and limbs permanently injuring her, and causing her much mental and physicial pain and suffering, etc.

For answer the doctor denied that during the operation or afterwards, or while Miss Quillen was under an anæsthetic, he placed or permitted to be placed, under her a bottle filled with hot water, or negligently or carelessly permitted it to be or remain under her body during the performance of said operation or afterwards or at all, or that she was burned, injured, damaged, or made to suffer thereby.

The proof was rather meager, but the plaintiff did prove the allegations of her petition, and did establish that there was a burn on her body about five by nine inches in area, from which she suffered intensely, and that Dr. Skaggs treated this burn while she was in the

hospital, and she was treated by another physician therefor for about two months after she went home. She testified that, while this burn has healed, it still gives her trouble, and itches, and breaks out in little pimples; that before this operation she was employed in the post office, and that after the operation the scar was drawn as a result of this burn, and it interfered with her walking; that the movement of her leg hurt these burns; and that, because of it, she was unable to resume her employment.

Dr. Bently described this wound as located on the gluteal region; in other words, it is on that part of the body whereon the weight of the body rests when one is seated.

In two respects, the evidence thins down almost to the point of vanishing. The first relates to where this operation was performed and the hospitalization was had.

The record shows Dr. Skaggs was not only a physician and surgeon, but was also the proprietor of a hospital, and that he performed this operation. The reasonable inference is the doctor did this work in his hospital.

Miss Quillen testifies she was operated on in the Fleming Hospital, and the reasonable inference is she received her hospitalization in the Fleming Hospital. The evidence connecting Dr. Skaggs with the Fleming Hospital is rather weak, but a Mrs. Harrison, a nurse, testified she was at the Fleming Hospital in June, 1928, working for Dr. Skaggs, that she assisted Dr. Skaggs in this operation, and that she discovered a hot-water bottle beneath Miss Quillen, who was then still unconscious, and she removed it, and that Miss Quillen received this burn from that hot water bottle. She further testified there was no burn on Miss Quillen when she was taken from the operating room to her room in the hospital. We regard that as sufficient to show Miss Quillen received this burn in the defendant's hospital.

The proof shows the Elkhorn Coal Company owns the building, but the doctor may have had it leased. One may agist cattle upon premises leased for that purpose, and still be an agistor; hence the doctor could be the proprietor of a hospital, though he conducted his hospital business in leased property.

The record indicates the court gave the peremptory instruction, because there was nothing to show who put

this hot-water bottle under Miss Quillen. That was erroneous. The court overlooked the fact that Dr. Skaggs was sued, not only as a physician and surgeon, but also as the conductor and operator of a hospital. We feel she showed enough to make out a prima facie case of responsibility on the part of Dr. Skaggs for her injuries. See 48 C. J. p. 1138, Sec. 144; 30 C. J. pp. 466, 467, Sec. 16, 17; 21 R. C. L. p. 393, Sec. 38; 13 R .C. L. p. 949, Sec. 13.

This young woman submitted to the doctor's care, hospitalization, and amesthetization with her integument entire; when she recovered consciousness, a portion of it had by needless burning been destroyed, and she was still in the doctor's hospital and under his care. In such a situation she does not have to offer further evidence to show who burned her. The reasonable inference from all this is that this hot-water bottle was placed under her by the doctor or some of his employees. Remember the doctor here did both the surgery and the hospitalization. We are not required here to say where his duty as a surgeon ceased and his duty as proprietor of the hospital began. It was his duty, since he was both, to exercise ordinary care to see she was not needlessly burned.,

The law frequently casts the burden of producing evidence upon the party best able to sustain it. See headnote 8 in Ledford v. Hubbard, 219 Ky. 9, 292 S. W. 345, and cases there cited; also 22 C. J. p. 81.

From the meager evidence here, it can be fairly inferred that hot-water bottles had been used to warm the bed preparatory to receiving this young woman after the operation, and that through some oversight one of them was not removed before she was put in it. It was the duty of Dr. Skaggs, as proprietor of this hospital, to use ordinary care to see this bed was in fit condition for her reception before she was put in it.

The burn itself, received under the circumstances shown by this record, is evidence of negligence. That a paid hospital is responsible for injuries resulting from negligence is settled in this state. See University of Louisville v. Hammock, 127 Ky. 564, 106 S. W. 219, 32 Ky. Law Rep. 431, 14 L. R. A. (N. S.) 784, 128 Am. St. Rep. 355. This which is taken from 45 C. J., p. 1193, Sec. 768, we regard as sound: "Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is

such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation of defendant, that the accident arose from want of care."

In other words, the doctrine of res ipsa loquitur applies in this case.

> "The reason or theory of the doctrine of res ipsa loquitur is based in part upon the consideration that, as the management and .control of the agency which produced the injury is, under the circumstances to which the doctrine applies, exclusively vested in defendant, plaintiff is not in a position to show the particular circumstances which caused the offending instrumentality to operate to his injury, while defendant, being more favorably situated, possessed the superior konwledge or means of information as to the cause of the accident, and should, therefore, be required to produce the evidence in explanation." 45 C. J. p. 1205, Sec. 773.

The doctrine of res ipsa loquitur was held in Meyer v. McNutt Hospital, 173 Cal. 156, 159 P. 436, applicable to a case where the plaintiff sued a hospital on account of injuries caused by alleged negligence of the hospital employees in allowing the plaintiff to be burned by a hot-water bottle while she was unconscious from the effect of an anæsthetic. The court held that circumstantial evidence was sufficient to show negligence, so as to sustain a judgment for the plaintiff, although there was no direct testimony to the effect that any servant of the hospital had applied hot-water bags or any other instrumentalities to produce the injuries upon the plaintiff. See, also, Adams v. University Hospital, 122 Mo. App. 675, 99 S. W. 453, where the patient was burned by a hot-water bottle while in a state of anæsthesia, and again the res ipsa loquitur doctrine was held applicable.

And this same doctrine was held applicable in Richardson v. Dumas, 106 Miss. 664, 64 So. 459, another hospital case. There is no dearth of hot-water bottle cases. See Stewart v. Calif. M. M. & B. Ass'n, 178 Cal. 418, 176 P. 46; Williams v. Pomona V. H. Ass'n, 21 Cal. App. 359, 131 P. 889; Pensacola Sanitarium v. Wilkins, 68 Fla. 447, 67 So. 124; Meridian Sanitarium v. Scruggs

121 Miss. 330, 83 So. 532; Fawcett v. Ryder, 23 N. D. 20, 135 N. W. 800; Tucker Sanitarium v. Cohen, 129 Va. 576, 106 S. E. 355, 22 A. L. R. 315.

The effect of the application of the doctrine of res ipsa loquitur is not to be misunderstood. The application of this doctrine makes a prima facie case for the plaintiff, so far as negligence is concerned, by merely shifting to the defendant the burden of producing evidence on the subject. It merely raises a legal presumption in the plaintiff's favor that this burn is the result of negligence upon the part of Dr. Skaggs or some of his employees. This is, of course, a rebuttable presumption, and means no more than that plaintiff is entitled to a favorable finding, unless the defendant introduces evidence to overcome it.

The distinction between this case and Donoho v. Rawleigh, 230 Ky. 11, 18 S. W. (2d) 311, and the usual cases found in the books, is found in the fact that Dr. Skaggs is sued as both surgeon and proprietor of the hospital. Miss Quillen showed enough to entitle her to have her case submitted to the jury. The judgment is reversed for consistent proceedings.