RENDERED: MARCH 22, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0771-MR

CARRIE HALL, AS
ADMINISTRATOR OF THE ESTATE
OF HASSEL DARRELL HALL AND
ALICE HALL                                                          APPELLANTS


|        | APPEAL FROM FLOYD CIRCUIT COURT |
|--------|----------------------------------|
| v.     | HONORABLE THOMAS M. SMITH, JUDGE |
|        | ACTION NO. 17-CI-00215           |


HIGHLANDS HOSPITAL
CORPORATION                                                          APPELLEE

AND


NO. 2022-CA-0773-MR

HIGHLANDS HOSPITAL
CORPORATION                                                  CROSS-APPELLANT


|        | CROSS-APPEAL FROM FLOYD CIRCUIT COURT |
|--------|----------------------------------------|
| v.     | HONORABLE THOMAS M. SMITH, JUDGE       |
|        | ACTION NO. 17-CI-00215                 |


CARRIE HALL, AS
ADMINISTRATOR OF THE ESTATE

OF HASSEL DARRELL HALL AND
ALICE HALL                                          CROSS-APPELLEES


OPINION
AFFIRMING IN PART AND
REVERSING IN PART

** ** ** ** **

BEFORE: EASTON, JONES, AND LAMBERT, JUDGES.

JONES, JUDGE: The estate of Hassel Darrell Hall ("The Estate") and Alice Hall, his widow, appeal from an order of the Floyd Circuit Court which granted summary judgment in favor of Highlands Hospital Corporation ("Highlands"), resulting in dismissal of the estate's claim for pain and suffering and Alice's claim for loss of consortium. Highlands filed a cross-appeal, arguing the trial court erred in denying its motion for summary judgment related to the need for an expert witness as to Hall's medical expenses prior to his death or, alternatively, by not granting its motion for directed verdict on the same issue at trial. We affirm the trial court's order granting summary judgment in favor of Highlands relating to the claims for pain and suffering and loss of consortium. We reverse the final judgment of the trial court because expert testimony was required with regard to medical expenses; therefore, summary judgment should have been granted on behalf of Highlands.

# I. BACKGROUND

In the days leading up to March 27, 2016, Hassel Hall was experiencing shortness of breath, difficulty breathing, and low oxygen saturation levels. On the evening of March 26, 2016, Hassel's oxygen saturation levels dropped into the mid-to-low sixties, but he refused to go to the hospital.[1] Hassel was prescribed oxygen therapy at all times due to emphysema, COPD,[2] and coal worker's pneumoconiosis (black lung disease). He was also in consultation with a pulmonologist specialist at the University of Kentucky for a possible lung transplant.

On the morning of March 27, 2016, Hassel finally agreed to go to the emergency room at Highlands. His wife, Alice, drove him; their daughter, Carrie, met them there. Carrie arrived first and went into the emergency department to retrieve a wheelchair. Upon arrival, Hassel was alert and able to get himself out of the car and into the wheelchair unassisted, while holding his portable oxygen tank. Carrie then pushed Hassel into the emergency department.

---

[1] The Halls' daughter, Carrie Hall, testified that Hassel's oxygen saturation levels were never above 92%. Although the medical records indicate Hassel's wife, Alice, told medical personnel at Highlands that Hassel's oxygen saturation levels had dropped into the "mid-fifties" on March 26, 2016, in her testimony, Alice stated his levels only dropped as low as the mid-sixties. "Normal oxygen saturation levels in a healthy individual are 96-99%." *Bryan v. CorrectCare-Integrated Health, Inc.*, 420 S.W.3d 520, 522 n.1 (Ky. App. 2013).

[2] Chronic Obstructive Pulmonary Disease.

Testimony from hospital staff indicate Hassel was "blue," "dusky," and "cyanotic" upon entering the emergency department. Upon arriving at the triage window, Hassel became unresponsive. Carrie described it as "a seizure" and testified he was biting his tongue and his head fell forward. Nancy Fraley, a triage nurse at Highlands who witnessed the events, testified she knew Hassel was in respiratory distress.

At that point, hospital staff and Carrie began to transport Hassel through triage for examination and treatment. Hassel was still in the wheelchair obtained from hospital staff upon arrival, being pushed by Carrie. The wheelchair did not have footrests and Hassel's feet were dragging the floor. By all accounts, Hassel was a large man and weighed approximately 250 pounds. Nurse Fraley and a registration clerk, Jessica Scarberry, attempted to assist in the transport of Hassel by lifting his feet off the floor. Upon doing so, the wheelchair tipped backward and both Hassel and the wheelchair landed on Carrie, although Hassel remained in the chair. Highlands' staff were able to get Hassel upright in the wheelchair once again, but upon lifting his legs, the wheelchair tipped backward for a second time, and Hassel's head struck the floor. Carrie described Hassel's coloring as "black" at that point. Hospital staff were able to get Hassel onto a gurney where they started CPR. He was subsequently intubated. A CT scan of Hassel's head was

performed, among other testing and treatment. He also tested positive for influenza.

Eventually, doctors at Highlands decided to transport Hassel to Pikeville Medical Center ("PMC") for treatment. He was taken by ambulance to a helipad, and from there he was airlifted to PMC. After arriving at PMC, another CT scan of Hassel's head was performed along with various other tests and treatment. Hassel never regained consciousness and was removed from the ventilator on March 29, 2016. He died approximately two minutes later. His death certificate lists the immediate cause of death as severe anoxic brain injury due to acute hypoxic respiratory failure due to coal worker's pneumoconiosis and COPD.

On March 23, 2017, the Estate filed the underlying complaint against Highlands. The Estate maintained, and continues to maintain, that this is a general negligence action based in premises liability. The Estate made claims for pain and suffering, medical expenses, punitive damages, and Alice made a claim for loss of consortium. Discovery ensued and, on March 10, 2021, the Estate filed its preliminary witness list, which included the names of Hassel's treating physicians at Highlands and PMC. Although the Estate included a section entitled "Rule 26.02 disclosures," the contents of this section failed to comply with CR[3] 26.02 or

---

[3] Kentucky Rule of Civil Procedure.

the Agreed Scheduling Order of the parties. As a result, no expert witnesses were disclosed by the Estate.

The next day, Highlands filed a motion for summary judgment, citing a lack of expert testimony by the Estate to prove injury, pain and suffering, and medical expenses. At the hearing before the trial court, the Estate argued that there was no "science" involved because this was not a medical malpractice case. The Estate also admitted that it could not relate Hassel's death to the wheelchair tipping, but it could show that the wheelchair tipped twice, and Hassel hit his head on the ground. Although the Estate argued expert medical testimony was not necessary, it pointed to Hassel's CT scan from Highlands to show what it characterized as brain swelling due to the fall. The trial court entered an order ruling that expert testimony was needed for any causal connection between the wheelchair tipping and Hassel's medical condition or death.

As a result, the trial court dismissed the Estate's wrongful death claim, including medical expenses not caused by the wheelchair tipping event. Alice's loss of consortium claim was dismissed for the same reasons. The trial court also found that expert testimony was needed to show pain and suffering attributable to the wheelchair tipping, and therefore also dismissed that claim. The trial court denied Highlands' motion for summary judgment related to any medical

expenses which the Estate could prove were specifically caused by the wheelchair tipping.

Discovery continued and, on June 23, 2021, Highlands filed a second motion for summary judgment on all remaining medical expenses, arguing a lay juror could not differentiate between medical expenses caused by Hassel's respiratory arrest and underlying conditions versus those caused by the wheelchair tipping. It also asserted the Estate had not produced any testimony that pointed to which expenses were specifically caused by the wheelchair tipping. Further, Highlands argued the Estate could not establish that the wheelchair event, and not Hassel's other medical conditions, more likely than not caused the medical expenses. The trial court denied the motion.

In August 2021, Highlands moved the trial court to clarify which medical expenses would be admissible at trial. The trial court held a hearing and accepted an itemization of hospital expenses that the Estate's counsel separated from the rest of Hassel's medical expenses for the three days he received treatment and testing at Highlands and PMC. Although the Estate argued it should be allowed to seek all $127,000 in medical expenses, the trial court allowed only those expenses that the Estate's counsel had determined were directly related to the wheelchair tipping, which were approximately $46,000. The Estate presented no lay or expert testimony at the hearing, or in any deposition prior to the hearing,

about which medical expenses could be tied specifically to the wheelchair tipping

event.  It does not appear from the record before us that the trial court entered an

order regarding permissible medical expenses.

A three-day trial was held in April.  Redacted medical bills totaling

$46,049.47 were admitted into evidence without any accompanying testimony

from lay or expert witnesses.  The jury found for the Estate and awarded $40,000

in medical expenses.  All parties appealed.  Further facts will be developed as

necessary.

## II. STANDARD OF REVIEW

We begin by noting that Highlands appeals from a denial of a motion

for summary judgment or, in the alternative, from denial of its motion for directed

verdict at trial.

> The general rule under CR 56.03 is that a denial of a
> motion for summary judgment is, first, not appealable
> because of its interlocutory nature and, second, is not
> reviewable on appeal from a final judgment where the
> question is whether there exists a genuine issue of
> material fact.  *Bell v. Harmon*, Ky., 284 S.W.2d 812
> (1955).

> However, there is an exception to the general rule found
> in *Gumm v. Combs*, Ky., 302 S.W.2d 616 (1957), and
> subsequently approved in *Loy v. Whitney*, Ky., 339
> S.W.2d 164 (1960), and *Beatty v. Root*, Ky., 415 S.W.2d
> 384 (1967).  The exception applies where:  (1) the facts
> are not in dispute, (2) the only basis of the ruling is a
> matter of law, (3) there is a denial of the motion, and (4)
> there is an entry of a final judgment with an appeal

therefrom.  Then, and only then, is the motion for summary judgment properly reviewable on appeal, under *Gumm.*

*Transportation Cabinet, Bureau of Highways, Commonwealth of Ky. v. Leneave*, 751 S.W.2d 36, 37 (Ky. App. 1988).

In the case at bar, there are no factual disputes.  The trial court ruled as a matter of law that expert testimony was not needed with regard to medical expenses related to the wheelchair tipping, and a final judgment was entered following the trial.  Accordingly, the denial of Highlands' motion for summary judgment is properly before us.  Also before us is the appeal of the trial court's order granting summary judgment in favor of Highlands due to lack of expert testimony related to pain and suffering and loss of consortium.

Ordinarily, we review appeals from summary judgment rulings *de novo*; however, we review preceding issues such as the adequacy of discovery or the necessity of expert testimony under the abuse of discretion standard, although they may be addressed by the trial court in a summary judgment order.  Whether expert testimony is required is wholly within the trial court's discretion.  *Green v. Owensboro Medical Health System, Inc.*, 231 S.W.3d 781, 783 (Ky. App. 2007).  We will reverse only upon finding the trial court abused its discretion.  *Id.*  "In Kentucky, the test for abuse of discretion is whether the trial court's decision was

arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Jackson v. Ghayoumi*, 419 S.W.3d 40, 43 (Ky. App. 2012) (citation omitted).

## III. ANALYSIS

Highlands has maintained that this is a medical malpractice case because the Estate has claimed negligence and the failure to provide the minimum standard of care. *See, e.g.*, *Chamis v. Ashland Hospital Corporation*, 532 S.W.3d 652 (Ky. App. 2017). Highlands also argues that expert testimony was necessary to prove each element of the Estate's claims regardless of what type of case it is. In contrast, the Estate has maintained that this is not a medical malpractice case, but rather, that its claims lie in general negligence and expert testimony is therefore not needed.

KRE[4] 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

---

[4] Kentucky Rule of Evidence.

(3) The witness has applied the principles and methods reliably to the facts of the case.

To determine if expert testimony was necessary, we begin by looking at each element of a negligence claim. "To demonstrate that the defendant was negligent a plaintiff must show that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty of care; (3) a causal connection between the defendants['] conduct and the plaintiff's damages; and (4) damages." *Gonzalez v. Johnson*, 581 S.W.3d 529, 532 (Ky. 2019) (footnote omitted).

"In medical malpractice cases the plaintiff must prove that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused injury or death. The bare possibility of causation will not suffice." *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982) (citations omitted). This is ordinarily accomplished through expert testimony that "must be that an alleged negligent act probably caused the injury, and that a nexus between the alleged act and the injury is not merely possible." *Jackson v. Ghayoumi*, 419 S.W.3d 40, 45 (Ky. App. 2012) (citing *Jarboe v. Harting*, 397 S.W.2d 775 (Ky. 1965)). Highlands' alleged negligent conduct would be a legal cause of harm to Hassel if: (a) Highlands' conduct is a substantial factor in bringing about the harm; and (b) there is no rule of law relieving Highlands from liability because of the manner in which its negligence

-11-

has resulted in the harm. *See Deutsch v. Shein*, 597 S.W.2d 141, 144 (Ky. 1980), *abrogated on other grounds by Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012).

The Estate's theory of the case throughout the proceedings, including trial and now before this Court, is that Highlands breached the standard of care by not providing a wheelchair with footrests to transport Hassel. The Estate maintains that, because the wheelchair did not have footrests, Hassel's feet dragged the floor. This, in turn, required Highlands' staff to lift his legs, which caused the wheelchair to tip backwards and Hassel to hit his head on the floor. The Estate argues Hassel had pain and suffering, related medical expenses, and Alice Hall experienced a loss of consortium, as consequences.

As previously stated, the Estate did not identify any expert witnesses. Although it did identify two of Hassel's treating physicians at Highlands and PMC as lay witnesses, only one of those physicians, Dr. Paul Weinberger, emergency room physician at PMC, testified at the trial. However, he was not asked to testify to the standard of care. In contrast, Highlands offered testimony from nursing expert Patricia Howard that the nurses at Highlands did what any reasonable and prudent nurse would do in providing care to Hassel, including providing a wheelchair without footrests. Ms. Howard explained that, due to the "dead weight" of an unresponsive patient, footrests on a wheelchair can actually act as a hinderance.

This is not a case in which hospital staff are alleged to have operated the wheelchair negligently by pushing it into a wall. Rather, the Estate's argument concerns the type of wheelchair supplied by the hospital. We agree with Highlands that whether it met the standard of care in the type of wheelchair provided to Hassel is beyond the knowledge of a layperson and required expert testimony. The average juror may be familiar with wheelchairs in a general sense, but this "does not mean that a jury would necessarily understand the specifics of [wheelchair usage] or the standard of care upon medical personnel [who provide them to patients for use]." *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676, 680 (Ky. 2005). A layperson could not possibly know what type of wheelchair would have been appropriate to transport a patient who was alert and ambulating on his own when the wheelchair was provided, but who suffered respiratory arrest and became unresponsive just moments later. Stated differently, a layperson would not know the medical reasons for transporting a patient with certain health issues in a wheelchair with footrests versus without. A lay juror would not know if there if there was some sort of defect in the wheelchair because it lacked footrests or if there was an overall design defect. Accordingly, we agree with Highlands that expert testimony was needed regarding the standard of care.

We next turn to the element of causation. The trial court found that expert testimony was required to show the wheelchair tipping caused: (1) a

worsening of Hassel's medical condition; and (2) pain and suffering. We agree with the trial court in this respect and summary judgment in favor of Highlands was appropriate. However, the trial court also determined expert testimony was not necessary to prove medical expenses attributable to the wheelchair tipping. We disagree with the trial court in this regard.

The Estate essentially argues it is possible for a lay juror to isolate the wheelchair tipping and discern pain and suffering and medical expenses caused solely by those events, and not from any other medical reason, without expert testimony. "There may, of course, be situations in which causation is so apparent that laymen with a general knowledge would have no difficulty in recognizing it." *Jarboe*, 397 S.W.2d at 778. "But excepting those situations we have adhered to the rule that the causal connection between an accident and an injury must be shown by medical testimony and the testimony must be that the causation is probable and not merely possible." *Id.* The Estate believes the case at bar falls into the category of cases where causation is readily apparent and requires no expert testimony. We disagree.

Further, although the Estate does not use the term in its brief to this Court, it is arguing that the doctrine of *res ipsa loquitor* ("the thing speaks for itself") applies with respect to negligence. However, the Estate must establish

causation *before* any inference of negligence can be made.  The Kentucky Supreme

Court has recently addressed this issue.  To wit,

> *Res ipsa loquitur* applies in medical malpractice cases when "any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care" or "when 'medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters.'" [*Perkins v. Hausladen*, 828 S.W.2d, 652, 655 (Ky. 1992)] (quoting *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256-57 (Ky. 1985)).  The former is "illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy." *Id.* at 654.  The latter occurs when expert testimony establishes the "type of injury was not an ordinary risk of the surgery, that the method by which it occurred was within the exclusive control of the defendant, and that the injury was not due to any voluntary action or contribution on the part of the plaintiff." *Id.* at 655.  In other words, "when the circumstances and the probabilities as to the *causative factors of an accident* lie within the ken of experts, *expert evidence is necessary* to establish a foundation that gives rise to an inference of negligence." 65A C.J.S. *Negligence* § 820 (emphasis added).
>
> Crucial to remember is *res ipsa loquitur* "allows an inference of negligence in certain cases, *not causation*; established causation is a prerequisite to the application of the doctrine." *Id.* at § 821 (emphasis added).  "A lack of knowledge as to the cause of the accident does not call for the application of the doctrine." *Cox v. Wilson*, 267 S.W.2d 83, 84 (Ky. 1954).  That "[t]he plaintiff's injury must have resulted from the accident[,]" is a basic element of *res ipsa loquitur* in Kentucky. *Id. See also Quillen v. Skaggs*, 233 Ky. 171, 25 S.W.2d 33, 34-35 (1930).  *Res ipsa loquitur* "must be linked with the injury suffered.  There may be an inference of negligence when,

-15-

according to common knowledge and experience, *the accident would not have happened except for* the wrongful act of the defendant." *Jos. N. Rice Co. v. Grayson*, 341 S.W.2d 238, 239 (Ky. 1960). The doctrine is therefore inapplicable where more than one cause can be inferred from the evidence. *Schroerlucke v. McDaniel Funeral Home, Inc.*, 291 S.W.2d 6, 8 (Ky. 1956). "[T]he doctrine [can] be applied only when the nature of the accident itself not only clearly supports the inference of negligence on the part of the defendant but excludes all other inferences that it might be due to one or more causes of which the defendant is not responsible." *Id.* at 9.

*Saint Elizabeth Medical Center, Inc. v. Arnsperger*, No. 2022-SC-0302-DG, --- S.W.3d ---, 2024 WL 316434, at *4 (Ky. Jan. 18, 2024) (internal footnote omitted).[5]

We now address the question of whether expert testimony was needed to establish that the wheelchair tipping event alone caused pain and suffering to Hassel. To receive an award for pain and suffering, there must be substantial evidence to establish that pain and suffering *actually occurred. Worldwide Equipment, Inc. v. Mullins*, 11 S.W.3d 50, 61 (Ky. App. 1999) (emphasis added). Importantly, the Estate never established that Hassel sustained an injury from the wheelchair tipping event. External physical examinations of his head at PMC revealed no injury, including bumps or bruising. Although the CT scan performed

---

[5] On February 8, 2024, the Kentucky Supreme Court issued a finality letter indicating that the case is now final and that it has been designated as published.

at Highlands showed "some posterior swelling," the record also indicates his treating physician "could not rule out stroke" in addition to the possibility it was caused by the wheelchair tipping. Testimony from expert witness Owen Samuels, M.D., produced by Highlands, indicated there was no sign of trauma to the brain either externally or from the two CT scans. Rather, he attributed the brain swelling to lack of oxygen due to respiratory arrest. Defense expert John E. Parker, M.D., also provided an affidavit stating that Hassel's brain swelling was unrelated to trauma from the wheelchair tipping. The Estate notably acknowledged at the hearing on the motion for summary judgment that it was seeking damages for pain and suffering only for the time between the first and second wheelchair tipping, which it admitted was a very small period of time, "seconds to a minute or two." This is because the Estate contends Hassel was conscious and capable of experiencing pain until he hit his head on the floor during the second tipping event.[6]

By all accounts, Hassel went into respiratory arrest and became unresponsive prior to the wheelchair tipping. He had severe, chronic, and complex underlying health issues and presented to Highlands extremely ill, including with undiagnosed influenza. The Estate argues because Carrie testified Hassel looked

---

[6] "[D]amages for pain and suffering are not allowed to an unconscious person." *Vitale v. Henchey*, 24 S.W.3d 651, 659 (Ky. 2000).

her in the eye for a brief moment when he was on the floor after the first wheelchair tipping, that necessarily means he was at least partially conscious. "Damages for pain and suffering may be awarded, however, if the injured person was partly conscious, had intervals of consciousness, or was conscious for a short time before death." *Vitale*, 24 S.W.3d at 659 (internal quotation marks and footnote omitted). However, a layperson would not be qualified to say if, given Hassel's medical conditions, he was conscious or partially conscious between wheelchair tipping events, regardless of whether his eyes were open.[7]

Whether an individual experiencing Hassel's medical conditions was conscious and able to experience pain is a question based on scientific, technical, or specialized knowledge. Accordingly, whether the wheelchair tipping event alone caused pain and suffering for Hassel required expert testimony. We therefore affirm the trial court's order dismissing the Estate's claim for pain and suffering as well as Alice Hall's corresponding claim for loss of consortium.[8]

---

[7] Although all witness testimony indicated Hassel became "unresponsive" prior to the wheelchair tipping, whether "unresponsive" is medically the same as "unconscious" and unable to experience pain is also outside the knowledge of a lay juror.

[8] "Loss of consortium damages can be obtained whenever a spouse is wrongfully incapacitated by a third party to the extent that the marital relationship has been damaged due to that harm." *Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104, 109 (Ky. 2009). Here, due to his underlying medical conditions – both past and present on the morning of March 27, 2016 – neither the Estate nor Alice Hall can prove without expert testimony that Highlands wrongfully incapacitated Hassel. *See also* Kentucky Revised Statute (KRS) 411.145.

-18-

We now turn to whether expert testimony was needed to prove medical causation related to the medical expenses the Estate attributed to the wheelchair tipping. Prior to trial, the Estate presented medical bills totaling approximately $127,000. Upon motion from Highlands to clarify which expenses would be admissible at trial, the trial court conducted a hearing and concluded the admissible medical expenses to be approximately $46,000, based solely on determinations made by the Estate's counsel without reference to any lay or expert witness testimony. The bills making up the $46,000 that were submitted to the jury were for the following: (1) the CT scan at Highlands; (2) radiology services at Highlands; (3) ambulance services to the helipad; (4) airlift services to PMC; and (4) the CT scan at PMC. Of the approximately $46,000 in medical bills, the bill for airlift services comprised roughly $38,000 of that total.

The question before us is not whether those amounts were reasonable, but whether the wheelchair tipping was a substantial factor in the resulting medical expenses presented to the jury. *Gonzalez*, 581 S.W.3d at 534. Dr. Paul Weinberger, Hassel's treating physician at PMC, testified he did not analyze the medical records for which tests and treatment were necessary for the head trauma versus respiratory arrest. He also testified that he could not say whether Hassel would have required transfer to PMC for respiratory failure regardless of any possible head trauma, or if he needed to be transferred to PMC due to both

-19-

respiratory failure *and* possible head trauma. However, Highlands presented expert testimony that all medical tests and treatment received by Hassel would have been necessary regardless of the wheelchair tipping due to the lack of oxygen to his brain during respiratory arrest. Further, the medical records present in the record before us vary as far as indicating whether Hassel's primary medical issue at the time was respiratory arrest or head trauma with most, including the record for air transport services, indicating respiratory arrest was the primary medical issue.

To recover damages for medical expenses, the Estate must show with reasonable certainty that said expenses "are the direct, natural, and proximate consequences of the defendant's wrongful act." *Western Union Telegraph Co. v. Guard*, 139 S.W.2d 722, 727 (Ky. 1940). Although it was never shown that Hassel sustained an injury from the wheelchair tipping, Highlands and PMC may have needed to investigate the possibility of an injury from the events. However, in a lengthy list of medical bills, it was an abuse of discretion for the trial court to allow the Estate's counsel to cherry-pick expenses he believed derived solely from the wheelchair tipping without the benefit of expert testimony.

The absence of proof on any one of the required elements of a negligence claim (*i.e.*, duty, breach, causation, and damages) is fatal to the claim. *M & T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky. 1974). A medical

malpractice case may only proceed to trial without expert testimony when "duty, breach, causation, and injury are readily apparent within the common knowledge of a jury[.]" *Arnsperger*, 2024 WL 316434, at *4. Here, due to Hassel's severe underlying health issues and the complications that arose when he arrived at Highlands, none of the elements are readily apparent to a lay juror without expert testimony to isolate and differentiate the wheelchair tipping event. In other words, Hassel's past and present medical conditions meant that more than one cause could be inferred from the evidence. *Id.*

## IV. CONCLUSION

For the foregoing reasons, we affirm the Floyd Circuit Court's order granting summary judgment to Highlands with regard to the Estate's claims for pain and suffering and loss of consortium. We reverse the trial court's final order awarding medical expenses totaling $40,000 to the Estate for medical expenses due to lack of expert testimony.

ALL CONCUR.

BRIEF FOR APPELLANTS/CROSS-APPELLEES CARRIE HALL AS ADMINISTRATOR OF THE ESTATE OF HASSEL DARRELL HALL AND ALICE HALL:

Jarrod Bentley
Prestonsburg, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT HIGHLANDS HOSPITAL CORPORATION:

Clay M. Stevens
Kristen H. Fowler
Rachel A. Stratton
Louisville, Kentucky